# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK KERZICH and TIMOTHY WERTZ, on behalf of themselves and all similarly situated individuals,

    Plaintiffs,

v.

COUNTY OF TUOLUMNE,

    Defendant.

No. 1:16-cv-01116-DAD-SAB

ORDER DENYING MOTION FOR APPROVAL OF FLSA SETTLEMENT

(Doc. No. 58)

    This matter came before the court for hearing on plaintiffs' unopposed motion for approval of a settlement under the Fair Labor Standards Act ("FLSA") on March 6, 2018. (*See* Doc. No. 58.) Attorney Paul Bird appeared on behalf of plaintiffs and attorney Arthur Hartinger appeared on behalf of defendants. Following the hearing, the court ordered plaintiffs to submit supplemental briefing addressing a number of issues. (Doc. No. 62.) Plaintiffs timely filed this supplemental briefing on April 4, 2018. (Doc. No. 63.) For the reasons discussed below, the court denies plaintiffs' motion for approval of the proposed settlement.

## BACKGROUND

    The complaint in this action was filed on July 28, 2016, alleging that defendants had violated the FLSA by under-paying municipal employees' overtime when the employees accepted cash in lieu of health care benefits, following the holding in *Flores v. City of San Gabriel*, 824

1

F.3d 890 (9th Cir. 2016). (Doc. No. 2.) A scheduling order was entered on November 1, 2016, setting a deadline for non-expert discovery to be completed by June 9, 2017 and expert discovery to be completed by September 20, 2017. (Doc. No. 32.) Prior to the passing of the discovery deadline, the parties stipulated to conditional certification of the action on February 23, 2017. (Doc. No. 37.) No substantive motion practice took place. A magistrate judge of this court held two separate settlement conferences in this action, one on October 2, 2017 (Doc. No. 47) and one on October 23, 2017 (Doc. No. 48). A settlement was reached following the second such conference.

This proposed settlement essentially encompasses three theories of liability plaintiffs have alleged against defendant. The first follows *Flores* directly, and alleges that any cash payments made to plaintiffs in lieu of healthcare benefits must be included in the calculation of overtime wages (the "cash-in-lieu" theory). (Doc. No. 63 at 5–6.) The second theory is an expansion of the holding in *Flores*, and seeks to have the total payments for healthcare benefits made by defendant on behalf of plaintiffs included in the calculation of overtime, regardless of whether they were paid as cash directly to plaintiffs or were in the form of healthcare benefits secured for plaintiffs (the "total benefits plan" theory). (*Id.* at 6–7.) Finally, plaintiffs seek to settle what they denote as their "canine claim," which concerns alleged underpayment of the defendant's canine police officers. (*Id.* at 8.)

The settlement agreement proposes a total payment of $375,000. (Doc. No. 58-3 at 3.) This total amount is designated to the following categories: $195,000 in damages to plaintiffs for both *Flores* theories of liability; $25,000 in damages for the canine claim; $5,000 total as incentive payments, awarding $2,500 each to plaintiffs Kerzich and Wertz; and $150,000 in attorneys' fees and costs to plaintiffs' counsel. (Doc. No. 58 at 16; Doc. No. 58-3 at 3–4.) Plaintiffs also request that a further 20 percent of the damages amounts and incentive payments be paid to plaintiffs' counsel as additional attorneys' fees. (Doc. No. 58-3 at 3–4.) Thus, counsel seeks an ultimate award of $195,000 in attorneys' fees and costs. (*See* Doc. No. 63 at 9.) The total award to be paid to the members of the collective on behalf of whom this case was brought is therefore $180,000.

2

## LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Beidleman v. City of Modesto*, No. 1:16–cv–01100–DAD–SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Yue Zhou v. Wang's Rest.*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007). Since neither party has represented that the Secretary of Labor has approved this settlement, it falls to the court to evaluate whether this settlement should be approved under the FLSA.

Employees may bring collective actions under the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, district courts in this circuit have frequently applied a widely-used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Additionally, because FLSA settlements require court approval, payment of attorneys' fees from settlement proceeds is also subject to review by the court. *See Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1104–05 (9th Cir. 2014) (reviewing an award of attorneys' fees under the FLSA); *Dunn*, 2016 WL 153266, at *9 (N.D. Cal. Jan. 13, 2016) ("The Court retains the authority to determine what fees are reasonable [in an FLSA settlement]."); *Selk*, 159 F. Supp. 3d at 1180 ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award.") (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010), *recommendations adopted by* 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the

settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* In connection with this, the district court's "[o]bligation is not to act as caretaker but as gatekeeper," so that FLSA "settlements do not undermine the Act's purposes." *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14–866–JLS (JCGx), 2015 WL 12868143, at *2 (C.D. Cal. Nov. 2, 2015) (quoting *Goudie v. Cable Commc'ns, Inc.*, No. CV 08-507-AC, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009)). Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## ANALYSIS

This case concerns a failure to accurately calculate the overtime compensation rate for employees who accepted cash payments in lieu of healthcare benefits, following the Ninth Circuit's 2016 decision in *Flores*. As indicated above, plaintiffs also allege a related, but distinct theory that, under *Flores*, an employer must include all healthcare benefits in calculating overtime rates. (*See* Doc. No. 58-2 at ¶ 17(b)). Finally, the settlement concerns a failure by the county to adequately compensate certain deputy sheriffs for canine-related duties, though this "canine claim" is not alleged in the complaint. (*See* Doc. No. 58 at 7.) This settlement cannot be approved as requested because, in the court's view, the attorneys' fee award provided for in the settlement is excessive.

Plaintiffs' counsel seeks more than 50 percent of the total settlement to be awarded as attorneys' fees, and the settlement agreement is specifically contingent on this fee arrangement. The settlement agreement first designates $150,000 of the settlement as payment for attorneys' fees, to be paid directly by the defendant. (Doc. No. 58-3 at 4.) Designating a portion of a settlement as attorneys' fees is appropriate and commonplace in the context of the FLSA, which has a fee-shifting provision such that the prevailing party would be entitled to receive attorneys' fees from the opposing party. 29 U.S.C. § 216(b); *Dunn*, 2016 WL 153266, at *4 ("Because settlement of a FLSA claim results in a stipulated judgment (at least when in district court), this provision [§ 216(b)] applies even where parties settle an individual action.") (internal citations

omitted); *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14-866-JLS (JCGx), 2015 WL 12868143, at *2 (C.D. Cal. Nov. 2, 2015) (observing the FLSA "requires that a settlement agreement include an award of reasonable attorneys' fees").

Typically, attorneys' fees under the FLSA are determined using the lodestar method. *See, e.g.*, *Pehle v. Dufour*, No. 2:06-cv-1889-EFB, 2014 WL 546115, at *1–2 (E.D. Cal. Feb. 11, 2014); *Nolan v. City of Los Angeles*, No. CV 03-2190 GAF (AJWx), 2014 WL 12564127, at *2 (C.D. Cal. Feb. 10, 2014); *Franco v. City of Victorville*, No. CV 07-7670 SVW (Ex), 2009 WL 10668439, at *5 (C.D. Cal. Sept. 23, 2009). The parties here provided some information regarding the number of hours expended by counsel[1] and their hourly rates[2] which are the starting point for a lodestar analysis. (Doc. No. 58 at 20.) Were the court to accept the figures provided by counsel, the lodestar amount here would be $181,851. Lodestar amounts are presumed to be reasonable. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008); *Van Gerwen v. Guar. Mut. Life. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 349, 363–64 (9th Cir. 1996). In this case, the $150,000 designated as attorneys' fees by the

---

[1] In the supplemental briefing, counsel provided itemized billing statements for their time expended on this case. (*See* Doc. No. 63-15.) These types of records would be customarily used to reach a lodestar amount. *See Mitchell v. Cate*, No. 2:08–CV–01196–TLN–EFB, 2015 WL 5920797, at *1 (E.D. Cal. Oct. 7, 2015) (indicating counsel supplied "contemporaneous time records that detail all work completed," allowing the court to compute the lodestar); *Yeager v. Bowlin*, No. 2:08–102 WBS JFM, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010) ("Under the lodestar method, the fee applicant must provide sufficient detail of its billing such that the court can evaluate what lawyers were doing and the reasonableness of the number of hours spent on those tasks.") (internal quotations omitted). A cursory review the billing records submitted suggests some reduction in the time expended by counsel might be appropriate, since certain billed items appear duplicative or unnecessary, or are too vaguely described to allow any meaningful review. However, given the more significant problems with the proposed settlement discussed above, the court will not address particular billing entries at this juncture.

[2] The court observes that hourly rates counsel provides—between $245 and $350 per hour—are on the high end of those typically approved in the Fresno division of the Eastern District of California, but within reason. *See, e.g.*, *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14–cv–02081–DAD–BAM, 2017 WL 4180497, at *9 (E.D. Cal. Sept. 21, 2017) (adopting hourly rates between $370 and $695 per hour for cross-check purposes only, but noting that judges in this division of the court typically utilize rates between $125 and $400 per hour in calculating lodestars). Again, given the other concerns with this settlement, the court will not delve further into a consideration of the appropriate hourly rates here.

6

proposed settlement is close to, albeit slightly beneath, the lodestar amount according to the parties. Of course, it is not unreasonable or improper for a party to agree to a moderate reduction in attorneys' fees in settlement of a claim. *See Staton v. Boeing Co.*, 327 F.3d 938, 965–66 (9th Cir. 2003). Had counsel here sought only $150,000 in attorneys' fees, this amount might have been considered reasonable, although the court would still have concerns about the discounting of the value of the claims discussed below.

However, as noted, plaintiffs' counsel also seek an additional percentage of the damages award as attorneys' fees. In particular, the settlement agreement calls for plaintiffs' attorneys to receive an additional 20 percent of the damages portion of the judgment, divided on a per-share basis among all the class members. (Doc. No. 58-3 at ¶ 4.) Thus, under the proposed settlement agreement plaintiffs' counsel would receive an additional 20 percent of the $225,000 awarded to the class—comprised of $195,000 for the *Flores* claims, $25,000 for the canine claim, and $2,500 in incentive payments to each of the named plaintiffs—or another $45,000 in attorneys' fees. In short, plaintiffs seek approval of a settlement that will award $195,000 of the $375,000 settlement, or 52 percent of the total settlement, to plaintiffs' counsel. The court simply cannot condone a fee award of this size—which would be more than double the Ninth Circuit benchmark for cases awarding attorneys' fees from a common fund, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Below, the court addresses each of counsels' arguments in support of the attorneys' fees under the proposed settlement, none of which the court finds to be persuasive.

According to plaintiffs' counsel, "[n]either the FLSA nor any case law prohibits an FLSA-plaintiff from signing a private fee agreement with her counsel to pay contingency fees from any damages she receives, as Plaintiffs have done here." (Doc. No. 63 at 9.) This may be the case. As a general matter, courts are rarely called upon to determine whether the private fee agreements attorneys strike with their clients are reasonable. Nonetheless, plaintiffs may not settle this case without court approval and the amount of attorneys' fees to be awarded is clearly one of the issues the court must consider when it is called upon to approve the fairness and reasonableness of a settlement. *See, e.g., Trout v. Meggitt-USA Servs., Inc.*, No. 2:16–cv–07520–ODW(AJW),

2018 WL 1870388, at *5 (C.D. Cal. Apr. 17, 2018) ("While attorneys' fees may be awarded in a certified collective action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award is reasonable, even if the parties have already agreed to an amount."); *Seguin v. County of Tulare*, No. 1:16–cv–01262–DAD–SAB, 2018 WL 1919823, at *5–6 (E.D. Cal. Apr. 24, 2018). Indeed, numerous courts have declined to approve FLSA settlements due, at least in part, to the attorneys' fee requests associated with them. *See, e.g.*, *Trout*, 2018 WL 1870388 at *5 (commenting "the Court previously took issue" with an agreed award of 33 percent of the settlement, finding it to be a sign of collusion); *Alder v. County of Yolo*, No. 16-cv-01682-VC, 2018 WL 770394 at *1 (E.D. Cal. Jan. 22, 2018) ("Plaintiffs' attorneys have not shown that it is appropriate for them to receive both statutory and contingent fee awards in this case, particularly as the latter reduces the amount each plaintiff receives as compensation for the alleged FLSA violations."); *Mar v. Genuine Parts Co.*, No. 2:15-cv-01405-MCE-AC, 2017 WL 68287, at *2–3 (E.D. Cal. Jan. 6, 2017); *Dunn*, 2016 WL 153266, at *8 (expressing skepticism with a FLSA settlement containing a contingency fee agreement which would allow counsel "to recover nearly double the percentage of their clients' settlements"); *Gamble v. Boyd Gaming Corp.*, Nos. 2:13–cv–01009–JCM–PAL, 2:13–cv–01043–JCM–PAL, 2:13–cv–01801–JCM–PAL, 2015 WL 4874276, at *10 (D. Nev. Aug. 13, 2015) (denying approval of an FLSA settlement in part because the court could not evaluate whether the attorneys' fees were reasonable).

Here, counsel suggests that a hybrid approach, awarding both statutory damages plus a contingency fee enhancement, is the most logical or fair from counsel's point of view, because a common fund approach would award too little in fees if only a few employees joined, while a statutory approach would award too little in fees if many employees joined. (*See* Doc. No. 63 at 9–10.) Counsel misunderstands the court's concern. It is precisely the self-interest of counsel against which the court must guard, whether the harm caused to the collective and the FLSA is purposeful or not. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cautioning courts to look for "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations");

8

*Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) (noting that, in setting attorneys' fees, the relationship between class members and class counsel "turns adversarial," thereby requiring the court to take on "the role of fiduciary") (quoting *Vizcaino*, 290 F.3d at 1052); *Trout*, 2018 WL 1870388, at *4 (noting that the court had previously denied approval because of the possibility of collusion due to counsel's receipt of a "disproportionate distribution of the settlement"); *Gonzalez-Rodriguez v. Mariana's Enters.*, No. 2:15-cv-00152-JCM-PAL, 2016 WL 3869870, at *5 (D. Nev. July 14, 2016) ("In the context of an FLSA collective action, a court must determine the reasonableness of attorneys' fees to minimize the conflicts that may arise between counsel and the plaintiffs."). The court assumes counsel can safeguard their own interests. Therefore, the fact that this fee arrangement may be beneficial to counsel plays no role in the court's determination of whether this settlement is fair to the members of the collective.

Of significant concern to the court is counsel's assertion in its supplemental briefing that their contingency fee arrangement "made it economically feasible to litigate this action," because it "facilitated settlement by effectively reducing the statutory fee paid by the County." (Doc. No. 63 at 10.) This logic reinforces, rather than dispels, the court's concerns. The point of a fee-shifting provision in a statute like the FLSA is to ensure that the burden of enforcing federal labor law does not fall on the employees, and to put the burden on employers to ensure they promptly pay what is legally owed without plaintiffs being saddled with attorneys' fees. *See Barrentine*, 450 U.S. at 739 (noting the purpose of the FLSA was "to protect all covered workers from substandard wages and oppressive working hours"); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (internal quotation omitted); *Peak v. Forever Living Prods. Int'l, Inc.*, No. CV 11–903–PHX–SRB, 2011 WL 13174334, at *8 (D. Ariz. Sept. 30, 2011) ("Because the FLSA was intended to provide workers with the full compensation due under the law, requiring a claimant to pay attorney's fees incurred to enforce his FLSA rights would frustrate the statute's underlying purpose.") (quoting *McBurnie v. City of Prescott*, No. CV-09-8139-PCT-FJM, 2010 WL 5344927, at *2 (D. Ariz. Dec. 22, 2010)). The suggestion that *the defendant County* is able to pay

a reduced attorneys' fee because that cost will instead be borne by the plaintiffs here is truly antithetical to the purposes of the FLSA's fee-shifting provision. Indeed, the fee-shifting provisions of the FLSA are intended to allow plaintiffs to find competent counsel if legal action is required to compel the employer to pay what is owed, because if the plaintiffs' claims are meritorious, counsel will be able to obtain its fees from defendants regardless of the size of the claims, freeing them from a reliance on contingency fees to make pursuit of the litigation worthwhile. *See Alvarez v. 894 Pizza Corp.*, No. 14-CV-6011 (JBW), 2016 WL 4536574, at *5 (E.D.N.Y. Aug. 2, 2016) (finding the FLSA's fee-shifting provision "guarantees that employees are not prevented from asserting their rights by an inability to retain competent counsel or the small size of their claims"); *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 687 (N.D. Ill. 2012) (noting the purpose of the FLSA's fee shifting statute "is to enable smaller claims to be litigated"); *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1314 (S.D. Fla. 2009) ("[T]he intent of the fee-shifting provision of the FLSA [is to] ensur[e] that individuals with relatively small claims may effectively enforc[e] their rights and protect[ ] the interest of the public.") (internal quotations omitted).

Next, plaintiffs' counsel invokes the Supreme Court's holding in *Venegas v. Mitchell*, 495 U.S. 82 (1990), as authority for the proposition that contingency fees may be agreed to in cases involving fee-shifting statutes. (Doc. No. 63 at 11–13.) However, consideration of the purposes of the FLSA demonstrates why the decision in *Venegas* does not support a finding that this settlement is fair. In *Venegas*, the Supreme Court held that 42 U.S.C. § 1988, the fee-shifting statute pertaining to civil rights actions, did not prevent a plaintiff from entering into a contingency fee arrangement with his attorney. *Id.* at 86–87. In so holding, the court noted that, since "§ 1983 plaintiffs may waive their causes of action entirely, there is little reason to believe that they may not assign part of their recovery to an attorney if they believe that the contingency arrangement will increase their likelihood of recovery." *Id.* at 88. This highlights a key difference between 42 U.S.C. § 1983 and the FLSA. While a plaintiff is generally free to waive any and all claims under § 1983, employees may not typically waive their rights under the FLSA. *See Barrentine*, 450 U.S. at 740 ("FLSA rights cannot be abridged by contract or otherwise

waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.") (internal quotations omitted); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) (holding that "Congress did not intend that an employee should be allowed to waive his right to liquidated damages" under the FLSA); *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010) ("[E]mployees cannot waive the protections of the FLSA.").

Further, the contingency fee agreement at issue in *Venegas* was not similar to the contingency fee agreement here. In *Venegas*, the plaintiff had agreed to a 40 percent contingency fee following trial, offset dollar for dollar by any award of attorneys' fees. 495 U.S. at 83. Here, it appears that plaintiffs were obligated under their fee agreement to give their counsel *both* the statutory fees *and* a 25 percent contingency fee. A dollar-for-dollar offset arrangement, like the one in *Venegas*, ensures that counsel will receive up to, but not more than, the total contingency amount to which the parties have agreed. In contrast, the payment structure contemplated here is essentially a contingency bonus. This arrangement virtually assures that counsel will be over-compensated for their work. *See Zhao Hui Chen v. Jin Holding Grp.*, No. 10 Civ. 0414(PAC), 2012 WL 279719, at *4 (S.D.N.Y. Jan. 31, 2012) ("The [FLSA] was not designed to create a windfall for attorneys."). The settlement counsel negotiated here assures a total award of attorneys' fees in excess of the lodestar amount they claim and amounts to more than half of the total value of the settlement. In short, *Venegas* does not support the attorneys' fees requested in this case.

This settlement agreement differs from many the court has reviewed because it provides for a specific contingency fee to be paid to plaintiffs' counsel, rather than indicating counsel will apply for a further percentage award up to a certain amount. (Doc. No. 58-3 at ¶ 4.) Because the settlement agreement specifies a certain percent of attorneys' fees to be awarded, the court cannot simply reduce the award. Instead, the court must reject this settlement agreement as structured, because the award of attorneys' fees contemplated is excessive and renders the settlement unfair. The motion to approve the settlement agreement will therefore be denied without prejudice to the parties renegotiating their agreement and resubmitting it for approval.

/////

11

Having concluded that the proposed settlement must be rejected as drafted, the court need not definitively reach any further conclusions about the substantive fairness of the settlement at this point. However, because it seems likely the parties will seek to renegotiate the settlement agreement, the court provides the following further guidance.

Plaintiffs' cash-in-lieu claim is premised on the Ninth Circuit's 2016 decision in *Flores*. Neither party disputes that cash payments made in lieu of healthcare benefits must be included in the overtime rate paid to the members of this collective action, and that pursuant to the decision in *Flores*, defendants are liable for this amount of damages. (*See* Doc. No. 58 at 9.) Nevertheless, despite the lack of a dispute on this point, plaintiffs' counsel still agreed to discount the value of the cash-in-lieu claims by 25 percent as part of the settlement of this action. (*See* Doc. No. 58 at 17; Doc. No. 58-4.) No satisfactory explanation has been provided to the court regarding why these claims—for which both liability and damages are certain and undisputed—has nevertheless been substantially discounted. *See Selk*, 159 F. Supp. 3d at 1172 ("If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute.").

Plaintiffs' counsel also failed to include liquidated damages in their estimation of the value of the cash-in-lieu claim in this case. (*See* Doc. No. 63 at 5–6.) The FLSA typically allows plaintiffs to recover double damages, awarding both the actual damages and an equivalent amount in liquidated damages. *See* 29 U.S.C. § 216(b); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) ("Double damages are the norm; single damages the exception."); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) (same); *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003). Employers may seek to establish a good faith defense to the liquidated damages component under the FLSA, but bear the burden of showing they acted with both objective and subjective good faith in their violation of the FLSA. *See* 29 U.S.C. § 260; *Local 246*, 83 F.3d at 298.

Plaintiffs assert that, prior to the Ninth Circuit's decision in *Flores*, it was not settled law that cash payments in lieu of health benefits should be considered part of the wages paid under the FLSA. (Doc. No. 58 at 9.) However, the court observes that, in *Flores* itself, the Ninth

12

Circuit imposed liquidated damages, finding the defendant had not acted in good faith. 824 F.3d at 897, 905–06. In doing so, the Ninth Circuit held that neither evidence that the city complied with other obligations under the FLSA nor evidence that it generally paid overtime at a rate more generous than required by law was sufficient to show the defendant had acted in good faith. *Id.* at 905–06. The Ninth Circuit also found that, in order to meet the "heavy burden" of establishing a good faith defense, the employer must present evidence that it took "the steps necessary to ensure [its] [] practices complied with [FLSA]," and "show that it actively endeavored to ensure such compliance." *Id.* at 905 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003)). This strongly suggests that, while some discounting of liquidated damages might be warranted in light of the settlement, completely excluding liquidated damages from the calculation of potential damages here is most likely inappropriate. The argument that the law was not sufficiently settled prior to the decision in *Flores* is not sufficient to entirely exclude the possibility of recovering liquidated damages, since such damages were awarded in *Flores* itself.

Here, the total amount of damages suffered by the collective action members with respect to the *Flores* claim is represented to be $103,107.17,[3] exclusive of liquidated damages. (*See* Doc. No. 58-4; Doc. No. 63 at 5–6.) Since liquidated damages are presumptively awardable, the appropriate starting point from which the court would consider the fairness of the settlement is therefore $206,214.34.

Additionally, it appears that plaintiffs' counsel accepted a 75 percent discounting of damages recoverable on the total benefits plan theory. A greater discounting is certainly more reasonable on this claim since it is more novel. Similarly, a more significant discounting of liquidated damages is also appropriate here, since the more novel the claim is, the more likely a good faith defense is to succeed. Nevertheless, plaintiffs' counsel once again has omitted liquidated damages in their entirety from the calculation of the value of the claim. No

---

[3] This figure may be incomplete. Plaintiffs' counsel, Jason Jasmine, has declared that 102 current and former employees have opted-in to this case. (Doc. No. 58-2 at ¶ 8.) However, counsel also provided a document depicting the calculations of the unpaid overtime wages. (Doc. No. 58-4.) That document reflects unpaid overtime wages for only 99 different employees. (*Id.*) It therefore appears that three class members were possibly omitted from counsel's calculation of the total amount of unpaid overtime wages.

13

representation has been made that liquidated damages were definitely not recoverable on this claim. Instead, plaintiffs' counsel explained that this claim was discounted by 75 percent, given that success on it was less likely. (Doc. No. 58 at 17; Doc. No. 58-4; Doc. No. 63 at 6–7.) Excluding liquidated damages entirely had the effect of halving the plaintiffs' recovery *prior* to counsel's discounting. No explanation has been provided to the court as to why the decision to discount plaintiffs' claim to this extent was reasonable or how it is consistent with the representations made to this court about the value of the claims presented. Considering that double damages are the norm under the FLSA (*see Haro*, 745 F.3d at 1259; *Alvarez*, 339 F.3d at 910; *Local 246 Util. Workers Union of Am.*, 83 F.3d at 297), if counsel believed this claim was worth 25 percent of its maximum value, it seems that it should have been valued at $114,554.73, rather than the $57,277.47 attributed to it. Counsel has provided no reason why liquidated damages were entirely excluded from these calculations.[4]

Taking the full value of the *Flores* claims in this case as calculated by plaintiffs' counsel and adding to it liquidated damages, the total potential recovery appears to be $664,433.26. (*See* Doc. No. 58-4.) According to the discounting plaintiffs' counsel represents was appropriate—a 25 percent discount of the cash-in-lieu claim and a 75 percent discount of the total benefits theory claim—the value of the *Flores* claims in this case would therefore appear to be $320,769.07. However, the proposed settlement provides only for the payment of $195,000 in damages for these claims, which is approximately 60 percent of their already-discounted value. In the court's view, counsel has not yet provided a satisfactory explanation why these claims were discounted by an additional 40 percent beyond what counsel considered to be a reasonable approximation of the value of the claims. While the court must reject the settlement as proposed due to the structuring of attorneys' fees as discussed above, the parties should bear in mind the court's comments if they attempt to seek court approval of any future proposed settlement.

/////

---

[4] Again, the court is not questioning whether discounting these claims in general was appropriate. Since the claim was more novel, a discount was certainly warranted. However, by excluding the liquidated damages, counsel ultimately discounted this claim by 87.5 percent, not 75 percent. Discounting the claim to this extent has not yet been adequately explained.

14

**CONCLUSION**

For the reasons given above, plaintiffs' motion for approval of this FLSA settlement (Doc. No. 58) is denied without prejudice to the parties attempting to settle this action in a manner that remedies the deficiencies identified above. The case is referred back to the assigned magistrate judge for further scheduling.

IT IS SO ORDERED.

Dated: **August 13, 2018**

UNITED STATES DISTRICT JUDGE