1  Gary M. Messing, Bar No. 75363
      gary@majlabor.com
2  Jason Jasmine, Bar No. 215757
      jason@majlabor.com
3  Steven Kaiser, Bar No. 105150
      steve@majlabor.com
4  D. Paul Bird II, Bar No. 202066
      paul@majlabor.com
5  **MESSING ADAM & JASMINE LLP**
   980 9th Street, Suite 380
6  Sacramento, California 95814
   Telephone:    916.446.5297
7  Facsimile:    916.448.5047

8  Attorneys for Plaintiffs MARK KERZICH and
   TIMOTHY WERTZ, *et al.*
9

10 Arthur A. Hartinger, Bar No. 121521
      ahartinger@publiclawgroup.com
11 **RENNE PUBLIC LAW GROUP**
   350 Sansome Street. Suite 300
12 San Francisco, California  94104
   Telephone:    415.848.7200
13 Facsimile:    415.848.7230

14 Attorneys for Defendant
   COUNTY OF TUOLUMNE
15

16                **UNITED STATES DISTRICT COURT**

17        **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

18

19 MARK KERZICH and TIMOTHY WERTZ,        Case No. 16-CV-01116-DAD-SAB
   on behalf of themselves and all similarly
20 situated individuals,                   **NOTICE OF MOTION AND JOINT
                                           MOTION FOR APPROVAL OF REVISED
21            Plaintiffs,                  FLSA SETTLEMENT AGREEMENT**

22        v.                               Judge:        Hon. Dale A. Drozd
                                           Hearing Date: December 4, 2018
23 COUNTY OF TUOLUMNE,                     Time:         9:30 a.m.
                                           Courtroom:    5
24            Defendant.
                                           Action Filed:  July 28, 2016
25

26

27

28

1    **TO ALL PARTIES AND COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on December 4, 2018 at 9:30 a.m. in Courtroom 5 of the

3    above-captioned court, Plaintiffs MARK KERZICH and TIMOTHY WERTZ on behalf of

4    themselves and all similarly situated individuals ("Plaintiffs") and Defendant County of Tuolumne

5    ("Defendant" or "Tuolumne County") (collectively the "Parties") will and hereby do move this

6    Court for an order approving the Parties' proposed settlement agreement as a fair and reasonable

7    compromise of a bona fide dispute.

8    This motion seeks approval of an FLSA settlement for a total of $450,000.00 (with

9    $252,000 allocated to Plaintiffs' damages, $6,000 to incentive payments, $124,500 in attorneys'

10   fees and $67,500 in costs). Plaintiffs' attorneys' fees are based on their lodestar; Plaintiffs

11   contend they are fair and reasonable; and Defendant has no objection. Settlement was obtained

12   through the guidance of Magistrate Barbara McAuliffe and resolves a bona fide dispute between

13   the Parties. It provides fair and reasonable compensation to each Plaintiff based both on the

14   allegations set forth in the complaint and provides an immediate monetary benefit in the form of

15   damages paid to 99 Plaintiffs and Consenters as well as an ongoing benefit as of December 2017,

16   when the County began including payments of cash in lieu of medical benefits in their regular rate

17   of pay for FLSA overtime purposes.

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00060292-12

1

NOTICE OF MOTION AND JOINT MOTION FOR ORDER TO APPROVE REVISED FLSA SETTLEMENT

1   This motion is based on this notice, the supporting memorandum of points and authorities

2   served and filed herewith, the declarations of Plaintiffs' counsel Gary Messing and Jason Jasmine,

3   Defendant's counsel Arthur Hartinger, and the papers and records on file herein, and on such oral

4   and documentary evidence as may be presented at the hearing on the motion.

5

6   Dated:  October 29, 2018          MESSING ADAM & JASMINE LLP

7

8                                     By _____
                                            */s/ Steven Kaiser*
9                                          GARY M. MESSING
                                           JASON H JASMINE
10                                          STEVEN KAISER
                                            D. PAUL BIRD II
11                                     Attorneys for Plaintiffs MARK KERZICH and
                                       TIMOTHY WERTZ, *et al.*
12

13

14  Dated:  October 29, 2018          RENNE SLOAN HOLTZMAN SAKAI LLP

15

16                                    By _____
                                            */s/ Arthur P. Hartinger*
17                                          ARTHUR A. HARTINGER
                                       Attorneys for Defendants COUNTY OF
18                                     TUOLUMNE

19

20

21

22

23

24

25

26

27

28

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

JOINT MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION...............................................................................................................1

II.     THE SETTLEMENT AGREEMENT...............................................................................3

     A.      Background Of The Settlement Agreement .................................................................3

     B.      The Terms Of The Settlement Agreement ..................................................................3

     C.      Expert Analysis Supports The Claims Made By The Plaintiffs. ................................4

     D.      The Settlement Provides Benefits For All Claims Made By Plaintiffs, Including Liquidated Damages ...........................................................................................6

          1.      The *Flores* Claim .........................................................................6

          2.      The Canine Claim.........................................................................6

          3.      The $3,000 Incentive Award is Proposed for Each Named Plaintiff ............7

          4.      Summary of the Claims ................................................................10

     E.      Administration Of The Claims .................................................................11

III.    STANDARD OF REVIEW ..............................................................................................12

IV.     THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE ............................................................................13

     A.      Plaintiffs' Liability Case Is Strong................................................................13

     B.      Without Settlement, There Is The Potential Risk, Expense, Complexity, And Likelihood Of Further Litigation................................................................13

     C.      The Settlement Is Within Plaintiffs' Range Of Possible Recovery .........................16

     D.      Extensive Discovery Was Conducted By Both Parties, And The Matter Settled Shortly Before Trial .................................................................................16

     E.      The Scope Of Release Is Limited To Claims Related To This Litigation ...............17

     F.      Experienced Counsel Views This Settlement As Reasonable .................................18

     G.      Settlement Was Reached Through The Guidance Of A Magistrate Judge .............18

V.      PAYMENT OF ATTORNEYS FEES ............................................................................19

     A.      Legal Standard........................................................................................19

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

## TABLE OF CONTENTS
### (Continued)

|  |  | Page |
|---|---|---|
| B. | The Lodestar Is Presumed To Be Reasonable To Appropriately Compensate Plaintiffs' Attorneys' For Their Time | 19 |
| C. | The Settlement Agreement Rectifies The Concerns Raised By The Court | 21 |
| D. | Addressing The Court's Concern, Plaintiffs' Attorneys' Fees In The New Settlement Agreement Are Fair And Reasonable | 21 |
| VI. | CONCLUSION | 21 |
|  | [PROPOSED] ORDER | 23 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adoma v. Univ. of Phoenix, Inc.,*
    913 F.Supp.2d 964 (E.D.Cal.2012) .......................................................................... 13, 17

*Ambrosino v. Home Depot U.S.A.,*
    No. 11cv1319 L(MDD), 2014 WL 3924609 (S.D. Cal. 2014)................................... 16

*Beidleman v. County of Modesto,*
    No. 116CV01100DADSKO, 2017 WL 5257087 (E.D. Cal. Oct. 26, 2017) ..................... 12

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................... 13, 20

*Blackwell v. Foley,*
    724 F.Supp.2d 1068 (N.D.Cal.2010) ........................................................................... 20

*Callahan v. County of Sanger,*
    No. 14-cv-600-BAM, 2015 WL 2455419 (E.D. Cal. May 22, 2015) ........................ 14

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008)....................................................................................... 19

*Chavez v. City of Albuquerque,*
    630 F.3d 1300 (10th Cir. 2011)................................................................................ 5, 14

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ..................................................................................................... 20

*County P'ship Co. v. Atl. Acquisition Ltd. P'shp.,*
    100 F.3d 1041 (1st Cir. 1996) ..................................................................................... 18

*Evan Alder, et al., v. County of Yolo,*
    No. 16-cv-01682-VC (E.D. CA 2018) .................................................................... 15, 20

*Farrar v. Hobby*
    506 U.S. 103 (1992) ..................................................................................................... 12

*Ferland v. Conrad Credit Corp.,*
    244 F.3d 1145 (9th Cir. 2001)..................................................................................... 19

*Flores v. County of San Gabriel,*
    824 F. 3d 890 (9th Cir. 2016)................................................................................ passim

*Goodwin v. Winn Mgmt. Grp. LLC,*
    No. 1:15-cv-00606-DAD-EPG, 2017 WL 3173006 (E.D. Cal. July 26, 2017) .............. 7, 8

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..................................................................................... 12

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ............................................................................... 13

*In re Bluetooth,*
  654 F.3d 935 (9th Cir. 2011)............................................................... 19

*Jones v. Agilysys, Inc.,*
  No. C 12–03516 SBA, 2014 WL 108420 (N.D. Cal. Jan. 10, 2014) ................................. 12

*Khanna v. Inter-Con Sec. Sys., Inc.,*
  No. CIV S-09-2214 KJM, 2012 WL 4465558 (E.D. Cal. Sept. 25, 2012) ........................ 12

*Larsen v. Trader Joe's Co.,*
  No. 11–cv–05188–WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014)............................ 18

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998)............................................................... 17

*Lynn's Food Stores, Inc. v. United States,*
  679 F.2d 1350 (11th Cir. 1982).......................................................... 12, 14

*McKeen-Chaplin v. Franklin Am. Mortg. Co.,*
  No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012)................................ 12

*Millan v. Cascade Water Servs., Inc.,*
  310 F.R.D. 593 (E.D. Cal. 2015).......................................................... 17, 18

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008)............................................................... 20

*Nat'l Rural Telecomms.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 18

*Ontiveros v. Zamora,*
  303 F.R.D. 356 (E.D. Cal. 2014)............................................................ 17

*Parkinson v. Hyundai Motor America,*
  796 F.Supp.2d 1160 (C.D. Cal. 2010).......................................................... 20

*Perdue v. Kenny A. ex rel. Winn (2010),*
  559 US 542 (2010) ..................................................................... 19, 20

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009)................................................................... 7

*Selk v. Pioneers Memorial Healthcare District,*
  159 F. Supp. 3d 1164 (S.D. Cal. 2016) ................................................ passim

*Slezak v. County of Palo Alto,*
  No. 16-CV-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017).................... passim

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

1

## **TABLE OF AUTHORITIES**
### (Continued)

2
**Page**

3
*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................................................ 7

4
## **FEDERAL STATUTES**

5
29 C.F.R. section 778.110 ................................................................................................ 5

6
29 C.F.R. section 778.215 .............................................................................................. 14

7
29 C.F.R. section 785.23 .................................................................................................. 7

8
29 U.S.C. section 201 *et seq.* (Fair Labor Standards Act) ...................................... passim

9
29 U.S.C. section 216 .................................................................................................... 19

10
## **TREATISES**

11
Peter Toll Hoffman, *Valuation of Cases for Settlement: Theory and Practice*, 1991 J. Disp.
    Resol. (1991) .............................................................................................................. 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

NOTICE OF MOTION AND JOINT MOTION FOR ORDER TO APPROVE REVISED FLSA SETTLEMENT

1

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**

3

**INTRODUCTION**

4      This motion is brought jointly by Plaintiffs MARK KERZICH and TIMOTHY WERTZ

5 and the Opt-In Plaintiffs (referred to herein collectively as "Plaintiffs")[1]; and Defendant COUNTY

6 OF TUOLUMNE ("Defendant" or "County").  Defendant and Plaintiffs are collectively referred

7 to herein as the "Parties".

8      The Parties have reached a new tentative settlement of this Fair Labor Standards Act

9 (("FLSA") 29 U.S.C. section 201 *et seq.*) matter which addresses the Court's reservations

10 concerning the prior settlement while providing the Plaintiffs appropriate recovery on their

11 damages.  (A copy of the proposed Revised Settlement Agreement is attached to the Declaration

12 of Gary M. Messing in Support of Joint Motion for Approval of Revised FLSA Settlement

13 ("Messing Decl."), Exh. 1.)  This motion seeks the Court's approval of the Parties' settlement of

14 $450,000, to be allocated approximately as follows:

15

16

17

18

19

_____

20 [1] The opted in Plaintiffs are as follows:  Michelle Abott, Kathleen Adams, Scott Anderson, David
Archibald, Bethany A. Baker, Julianne Baker, Nancee Baker, Rebecca Bogolea, Ashley Boujikian,
21 Breanne Brown, John Burkett, Lee Butler, Max Cannon, Richard Champlin, Malissa
Cruickshanks, Kevin Curran, Amber Davis, Craig Davis, Eric Davis, Daniel Decroix, Macejko
22 DeLacy, Kelly Dickson, Jennifer Dillon, Wesley Durnall, Leigh Ann Eastman, Jennifer Ellis, Terri
Ferrell, Emily Flosi, Andrew J. Ford, Jamie Galvez, Jeff Glemper, Esmeralda Gonzalez, Daniel
23 Graziose, Shaylene Graziose, Brandon Green, Jeremy Green, Patrick Griswold, Philip Halencak,
Paul Harrison, Rodney Hobbs, Brandon Holt, Tyler Hopkins, Robin Hunt, Andrea Hurtado,
24 Christopher Hurtado, Oliver Imlach, Mayle Johnson, James B. Kelley, Constance King,
Christopher K. Laios, Neil Lillie, Wyatt Livingston, Robert Lyons, Stacey Macdonald, Scott
25 McAndrews, Lonnie McCarty, Larry McNeil, Joseph Morton, Deborah Moss, Daniel Newman,
Robert Nikiforuk, Lisa Ohler, James W. Oliver Jr., Wyatt Oliver, Jacob Ostoich, Jamie Pacheco,
26 Adam Paszkowski, Sarah Pennington, Steven Piech, David Poel, Nicole Rager, Andrea Ransom,
Robert Ransom, Bryan Rapoza, Jared Richards, Pamela J. Rivers, Eric Roberts, Nathan Rogers,
27 Amanda Roos, Paula Rosa, Travis Sanches, Nicco Sandelin, William Keith Schertz, William
Shane Schertz, Steven Sebring, Victor Serrano, Andrew C. Smith, Russ Smith, Rhonda Solus,
28 Israel Speer, Robert Speers, Mathew Stuart, Justin Teague, Nicholas Thompson, Donna Torres,
Jason Tudor, Jeff Wilson, Nathan Yorston, Matt Zelinsky, and Pamela Zils.

| | |
|---|---|
| *Flores* Claim Damages | $227,000 |
| Canine Claim Damages | 25,000 |
| Incentive payments to named Plaintiffs | 6,000 |
| Plaintiffs' attorneys' fees | 124,500 |
| Plaintiffs' attorneys' costs | 67,500 |
| **Total** | $450,000.00 |

The settlement provides for full FLSA recovery to Plaintiffs, ensures that Defendant will pay all FLSA damages, and apportions fair and reasonable attorneys' fees to Plaintiffs' counsel.

Guided by the Court's August 13, 2018 Order denying the Parties' motion to approve the first settlement and under the direction of Magistrate Judge Barbara McAuliffe, the Parties' new settlement agreement resolves a bona fide dispute as it provides fair and reasonable immediate compensation to all of the ninety-nine Plaintiffs based on the allegations set forth in the complaint and on an additional claim discovered by Plaintiffs during the course of litigation; as well as an ongoing benefit as of December 25, 2016, when the County began to include cash paid in lieu of health insurance benefits in the Plaintiffs' regular rate of pay for FLSA overtime.  (Messing Decl., ¶ 11, 12, 13; Declaration of Jason H Jasmine in Support of Joint Motion for Approval of Revised FLSA Settlement ("Jasmine Decl."), ¶ 14; and Declaration of Arthur A. Hartinger in Support of Joint Motion for Approval of Revised FLSA Settlement ("Hartinger Decl."), ¶ 12.)   The Settlement Agreement addresses the deficiencies identified by the Order.  The County will increase the funds allocated to damages for the Plaintiffs and will pay a flat fee to Plaintiffs' counsel for attorney fees, as set forth above.  The contingency fee has been removed in response to the Court's prior Order expressing reservations.  (Messing Decl., ¶ 22.)  Plaintiffs' counsel's fees are reasonable because they are based upon their lodestar and are in line with awards recently made by other district courts.  (*Ibid.*)

The Parties request that the Court approve this new agreement as it embodies a fair and reasonable resolution of a bona dispute, provides fair and reasonable awards for FLSA claims, and provides reasonable attorneys' fees and costs to counsel.

## II.

## THE SETTLEMENT AGREEMENT

**A.    Background Of The Settlement Agreement**

The facts and chronology of this matter were set out in detail in the prior briefing and are summarized as follows.  Plaintiffs are nonexempt employees of Defendant County, who brought an action against it for overtime compensation under the FLSA  Plaintiffs allege that the County underpaid them because (1) it failed to include certain cash-in-lieu-of-medical-benefits in their regular rate of pay (this claim is referred to as the "cash in lieu" or "CIL Claim"); and (2) its benefits plan was not "bona fide" as its CIL payments to certain Plaintiffs were not an "incidental" part of the total plan (this claim is referred to as the "total benefits plan" or "TBP Claim").  These two claims were made pursuant to the recent 9th Circuit ruling in *Flores v. County of San Gabriel*, 824 F. 3d 890 (9th Cir. 2016 [referred to herein as "*Flores*"]), and are therefore referred to collectively as the "*Flores* claim."  During the pendency of the case, it was determined that certain of the Plaintiffs were also owed backpay for the County's failure to include a payment differential in their regular rate of pay for canine work (the "Canine Claim").  (Declaration of Jason Jasmine at ¶ 8.)

At the end of a second settlement conference with Magistrate Judge Barbara McAuliffe held on October 23, 2017, the Parties reached a proposed agreement to settle.  This Agreement was presented to this Court, which, on August 13, 2018 and after extended briefing, denied the Parties' joint motion without prejudice to the Parties attempting to settle the action in a manner that remedied the deficiencies the Court identified in its order.

On September 5, 2018, the Parties met again with Magistrate Judge McAuliffe, at the end of which the Parties reached a new proposed settlement agreement (Messing Decl., ¶ 13), which is the subject of this Motion.

**B.    The Terms Of The Settlement Agreement**

Under the terms of the Settlement Agreement, the County has agreed to pay a total of $450,000.00 (the "Settlement Amount") to settle this case.  (Messing Decl. *passim*.)  This figure is made up of $227,000 in damages to Plaintiffs arising from the *Flores* Claim, $25,000 in damages

1  arising from the Canine Claim, and $3,000 each as an incentive payment to the two named

2  Plaintiffs; and $192,000 in attorneys' fees and costs to Plaintiffs' counsel.  Further, the County

3  agreed to comply with the FLSA overtime wage requirements as set forth in *Flores*, *supra*, and

4  began including cash paid in lieu of health insurance benefits in the regular rate of pay for FLSA

5  overtime as of December 25, 2016.

6      As to the *Flores* Claim, each Plaintiff's share consists of a proportionate share of the

7  amount the County agrees to pay in damages (cash in lieu of health insurance benefits, and all

8  health insurance benefit payments) in the regular rate of pay based upon each employee's overtime

9  hours between July 28, 2013 and December 25, 2016.  (Messing Decl., ¶ 10.)

10  **C.      Expert Analysis Supports The Claims Made By The Plaintiffs.**

11      Plaintiffs' damages analysis was performed by Kirk Koenig of ERS Group.  Kirk Koenig,

12  who at the time was a Principal at ERS Group, a national economic research and consulting firm,

13  and members of his staff generated and performed the calculations in the sheet at Docket No. 58-4

14  (Messing Decl., ¶¶ 11 and 12, Exh. 2),  referred to henceforth as the "Calculations Document."

15  (Messing Decl.,  ¶¶ 11, 12, 39, Exh. 16 (Declaration of Kirk Koenig ("Koenig Declaration")).)

16  Mr. Koenig has more than 20 years of experience conducting economic research and providing

17  financial, economic, forensic accounting, statistical and information management consulting

18  services in litigation and non-litigation matters.  He has calculated economic damages on

19  numerous occasions during the course of his career and is frequently called upon to analyze data in

20  the context of labor and employment disputes.  (*Id*., Exh. 16, at ¶ 1 and 2.)  The numbers in

21  columns three and four depict the maximum value of unpaid overtime wages for class members

22  pursuant to a two-pronged theory of recovery, do not include liquidated damages, were based on a

23  three-year statute of limitations, and were weighted based upon the likelihood of recovery under

24  each prong of the two-pronged theory of recovery advanced by Plaintiffs, as follows.

25      Plaintiffs alleged a two-pronged theory of recovery based on how the County employed its

26  "Cafeteria 125," or flexible benefits, plan.  That plan allowed each Plaintiff either to have the

27  County pay for health and medical benefits or pay cash in lieu of those benefits.  Based on the

28  holding in *Flores,* Plaintiffs alleged that any cash-in-lieu (or "CIL") payments should have been

included in the employee's regular rate of pay for purposes of calculating FLSA overtime.  The settlement agreement refers to this as the "CIL" claim.  (Messing Decl., ¶ 10, Exh. 1 Settlement Agreement at pg. 3, "Terms" 1(b)(ii).)  Next, if the County's plan was found not to be bona fide, Plaintiffs alleged that the County should have included the *entire value* of the plan's allowances (to include the cash-in-lieu payments) in their regular rate of pay, again based on the *Flores* case (*supra,* at 902).  The settlement agreement refers to this as the "TBP" (Total Benefits Plan) theory.  (*Ibid.*)

Pursuant to the CIL theory, the amounts in column four of the Calculations Document reflect the maximum unpaid overtime wages for a class member who received cash-in-lieu of benefits.  (Messing Decl., Exh 16 [Koenig Decl.], ¶ 5.)  Pursuant to the TBP theory, the amounts in column four reflect the maximum unpaid overtime wages for all class members based on the entire value of the plan's allowances.  (*Ibid.*)  The amounts in both columns reflect a three-year statute-of-limitations period and do not include liquidated damages.  (*Ibid.*)

In column six, the CIL claim was discounted by 22.4% to take into account the risk of bringing the matter to trial.

The County hired its own economic experts, Mark Cohen and Erik Volk of Cohen Volk Consulting, to evaluate damages.  According to Defendant's experts, the greatest value of Plaintiffs' potential recovery is $108,434, which includes liquidated damages and is based on three years of back pay.  (Hartinger Decl., ¶ 8.) This figure is substantially lower than the figure calculated by Plaintiffs' expert because Plaintiffs' calculations used a 1.5 multiplier to calculate damages, whereas Defendant's expert believes that only a 0.5 multiplier should be used. (Hartinger Decl., ¶¶ 9, 10.)  Both the FLSA's implementing regulations and federal case law support Defendant's position.  See 29 C.F.R. § 778.110; *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1311 (10th Cir. 2011).

Therefore, in the view of Defendant's, the settlement amount provides Plaintiffs with the full-value of their back-pay, with a three-year statute of limitations plus liquidated damages.  (See Hartinger Decl., ¶ 13.)

**D. The Settlement Provides Benefits For All Claims Made By Plaintiffs, Including Liquidated Damages**

**1. The *Flores* Claim**

Although the Parties have agreed upon the issues of liability for all claims made, there is a difference in the calculation of damages which has been thoroughly addressed in the Settlement Agreement. In view of the dearth of authority governing these claims, a compromise was reached pursuant to which both the CIL and TBP claims were valued at the mean between the valuation performed by Plaintiffs' and Defendant's expert valuations, except that TBP damages were reduced to 22.4% of full value because of the agreement that this claim was that much less certain to prevail at trial.[2] This full value was used for calculation of damages related to the CIL claim, and was distributed to each Plaintiff in proportion to the number of hours of overtime logged by each, as determined by the Plaintiffs' expert. This amount was then doubled to account for the Liquidated Damages associated with the claims, resulting in a total of $158,365.17. The damages associated TBP claim were doubled to account for the Liquidated Damages associated with the that claim, resulting in a total of $68,634.83.

**2. The Canine Claim**

The Canine Claim was given a calculated value ($25,000) associated with the claims of those Plaintiffs to whom it applies. The general framework for the settlement was to provide two years of back pay for underpayment of canine pay.[3] (Hartinger Decl., ¶ 3, Exh. A.) A spreadsheet that more fully explains the calculation table set forth at Document 58-5 is attached to Mr. Hartinger's declaration. (Hartinger Decl., Exh. A.) The parties agreed that liquidated damages and a two year statute of limitations were appropriate because the Deputy Sheriff's Association ("DSA") and the County had jointly agreed to the methodology, and agreed the calculation should be changed to ensure it comported with the FLSA. (*Ibid.*) The parties agreed there was no bad

---

[2] Again this "discount" is based on the Plaintiffs' expert calculations. There is no discount based on Defendant's expert calculation.

[3] The Order set forth questions concerning calculations of the "Canine Claim" (Canine Officer back pay) which the County performed and about which it responds.

1   faith on the part of the County and have made a good faith estimate of 20 minutes of off duty time

2   for canine care pursuant to 29 C.F.R. section 785.23.  (*Ibid.*)

3        The breakdown of the formula begins with a calculation of what overtime would have been

4   paid if there had been 30 minutes of underpaid overtime, less a discount for the reality that the

5   actual time was closer to 20 minutes; the formula did not seek any set-off or credits (for example,

6   for overtime which was not required under the FLSA because there was insufficient actual work

7   time in the period in question); and there is some degree of uncertainty as to whether plaintiffs

8   would prevail in the litigation.  (*Id.* at ¶ 5.)  Reviewing Exhibit A, Column B represents the canine

9   pay actually received by the officer during the period; Column C represents overtime with a thirty

10  minute per day assumption of off-duty canine work; Column D represents the difference – i.e.,

11  Column B subtracted from Column C; Column E is the discount (as described in paragraph 5

12  above); Column F is the final amount.  (*Id.* at ¶ 6.)

13       **3.       The $3,000 Incentive Award is Proposed for Each Named Plaintiff**

14       At its discretion, a district court may award incentive payments to named plaintiffs in an

15  FLSA collective action.  (*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).)

16  The purpose of incentive awards is to "compensate class representatives for work done on behalf

17  of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

18  sometimes, to recognize their willingness to act as a private attorney general."  (*Ibid.*)  In

19  reviewing whether an incentive award is appropriate, the court should consider, among other

20  things, "the actions the plaintiff has taken to protect the interests of the class, the degree to which

21  the class has benefitted from those actions, and the amount of time and effort the plaintiff

22  expended in pursuing the litigation."  (*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).)

23       In 2017 the Eastern District Court preliminarily approved a $7,500 incentive award to the

24  named plaintiff though that amount was significantly higher than the average recovery amount of

25  individual class members, which plaintiff estimated to be $112, and represented 3% of the total

26  settlement fund.  (*Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2017 WL

27  3173006, at *12-13 (E.D. Cal. July 26, 2017).)  The court noted that at the final approval hearing

28  it would review plaintiff's evidence that the requested incentive award was warranted "*i.e.*,

1  evidence of the specific amount of time plaintiff spent on the litigation, the particular risks and

2  burdens carried by plaintiff as a result of the action, or the particular benefit that plaintiff provided

3  to counsel and the class as a whole throughout the litigation." (*Ibid.*)  The court looked at

4  incentive amounts courts in the circuit had previously approved and found the award was "not

5  outside the realm of what has been approved as reasonable by other courts." (*Ibid.*)

6      In *Selk v. Pioneers Memorial Healthcare District*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal.

7  2016) the court found that a $5,000 service payment to plaintiff Selk was "reasonable and

8  appropriate" though the settlement fund amounted to only $50,000.  The settlement fund was

9  apportioned with 65 opt-in plaintiffs receiving individual settlement payments totaling $17,500,

10  plaintiffs' counsel receiving $22,000 in attorney's fees and costs, and Selk receiving a separate

11  payment of $5,500 (in consideration for signing a "full and complete" settlement agreement with

12  the defendant that included a general release of claims).  In arriving at its decision, the court noted

13  that the plaintiff had brought and prosecuted the action on behalf of herself and others, met with

14  counsel in person 11 times and telephonically at least 35 times, was deposed, assisted counsel in

15  the discovery process, and was consistently available to answer questions from counsel during

16  more than two years that transpired between the filing of the matter action and notice of its

17  settlement.  The court also noted that Selk's decision to file suit and pursue the action resulted in

18  "substantial benefits" on behalf of the class which as a rough estimate suggested that the

19  settlement amount represented between 26% to 50% of recoverable damages.  (*Ibid.*)

20      Here, incentive awards of $3,000 each to named plaintiffs Mark Kerzich and Timothy

21  Wertz are warranted as they expended substantial time and effort pursuing the litigation while

22  their efforts protected the interests of the members of the collective action and brought them

23  significant benefits.  Since 1996, Kerzich has worked for the Tuolumne County Sheriff's Office

24  where he is currently a Sergeant.  (Declaration of Mark Kerzich in Support of Motion for

25  Settlement Approval ("Kerzich Decl."), attached to Messing Decl., ¶ 37, Exh. 14.)  In July of

26  2016, he became aware of the *Flores* decision, saw that it dealt with compensation from cafeteria

27  plans, realized that he was compensated in a similar manner, thought that the decision might

28  impact his compensation, and contacted Plaintiffs' counsel.  (*Ibid, passim.*)  He performed some

1    internet research on his own to understand the potential causes of action.  (*Ibid*.)  Based upon the

2    *Flores* decision, he made rough calculations of his pay and concluded the County owed him

3    money.  (*Ibid*.)  He wanted to bring a lawsuit to obtain compensation not only that he thought was

4    owed to him but also owed to numerous other persons he believed had been incorrectly

5    compensated.  (*Ibid*.)  He then approached Timothy Wertz, the other named Plaintiff, to join with

6    him to file this lawsuit.  (*Ibid*.)  For his part, Mr. Wertz twice conferenced with Plaintiffs' counsel

7    for a total of roughly four hours regarding potential claims that could be brought in the action,

8    facts to support the claims to be brought, and potential damages and also conferenced at least

9    twice with named Plaintiff Mark Kerzich for a couple of hours regarding potential claims and facts

10   in support of them.  (Declaration of Timothy Wertz in Support of Further Joint Motion for

11   Settlement Approval ("Wertz Decl."), attached to the Messing Decl.,¶ 38,  Exh. 15, at ¶ 3.)  He

12   then spent several evenings at home after work for a total of about twelve hours accessing

13   (through an online website portal where the County stored his payroll information) and printing

14   out on his home printer several years' worth of paystubs from his work as a deputy sheriff for the

15   County which he then provided to counsel for analysis.  (*Ibid*.)

16          After the lawsuit was filed, Mr. Kerzich had conversations and exchanged correspondence

17   with individuals about joining the lawsuit as he "attempted to e-mail as many people" as he could

18   who he thought would be affected by the lawsuit.  (Kerzich Decl., *supra*.)  He believed he

19   eventually e-mailed 80 to 100 County employees who were potentially eligible about joining the

20   action.  (*Ibid*.)  Individuals also e-mailed him for clarification about how to join the lawsuit.

21   (*Ibid*.)  At least a dozen people, all of whom eventually opted into the action, approached Mr.

22   Wertz to discuss the case and the claims it alleged.  (Wertz <u>Decl,</u> attached to Messing Decl., ¶ 38,

23   Exh. 15.)

24          Several times in March and April 2017, for a total of two to three hours each, Plaintiffs'

25   counsel conferenced with both Messrs. Kerzich and Wertz to obtain information to respond to the

26   County's discovery (interrogatories, requests for documents, and requests for admissions) directed

27   to each of them.  (Jasmine Decl., ¶ 12; Kerzich Decl., attached to Messing Decl., Exh. 14, at  ¶ 6 –

28   9; and Wertz Decl., attached to Messing Decl. Exh. 15, at ¶¶5 - 8.)  They each located and sent

1    counsel responsive documents and then reviewed counsel's drafts of the discovery responses of

2    each to assist him in finalizing them.  After the County noticed their depositions, Plaintiffs'

3    counsel spoke with each of them separately to ensure they understood what to expect and to

4    prepare for their appearance.  Each then separately met with counsel prior to their depositions to

5    prepare and then appeared at their individual depositions:  Mr. Wertz in May and Mr. Kerzich in

6    June.  After his deposition, Mr. Kerzich provided Plaintiffs' counsel numerous responsive

7    documents for supplement production to the County.  (*Ibid*.)

8         From May until September, plaintiffs' counsel often communicated with both named

9    plaintiffs either by phone or e-mail regarding the status of discovery and to discuss the case and

10   eventually to ask that they attend this matter's settlement conference.  (*Ibid*.)

11        On October 2, 2017, Kerzich and Wertz drove together for roughly two and a half hours

12   from Sonora, CA, to the federal courthouse in Fresno, CA, to appear at the settlement conference

13   which lasted almost five hours, after which they drove for another two and a half hours back to

14   Sonora.  (Kerzich Decl., *supra*, and Wertz Decl., *supra*, at ¶ 10 in both declarations.)  At some

15   point in October after the conference, Wertz talked with Plaintiffs' counsel for roughly two hours

16   about the potential of also settling what became known as the "Canine claim" in conjunction with

17   settlement of the original claims addressed by this matter's complaint.  They discussed the hours

18   that he had worked, the pay he received, and other particulars about working as a K-9 officer

19   which supported this new claim that was eventually settled.  (*Ibid*.)  On October 23, 2017, Messrs.

20   Kerzich and Wertz again drove together for about two and a half hours from Sonora to Fresno to

21   appear at the continued settlement conference after which they drove for roughly two and a half

22   hours back to Sonora.  (*Id,* at ¶ 12 in both declarations.)

23        Thus here, where named Plaintiffs Kerzich and Wertz have expended such an extensive

24   amount of time and effort to protect the interests of the collective action which has benefitted

25   greatly from those actions, incentive awards of $3,000 for each are appropriate and reasonable.

26        **4.    Summary of the Claims**

27        The following chart summarizes the Settlement Amount to be allocated to the Plaintiffs.

28   (Messing Decl., ¶ 14.)

| | Plaintiffs, including consenters | Defendant | Average |
|---|---|---|---|
| CIL damage number | $103,107.17 x 2* = **$206,214.34** | $55,528 x 2* = **$110,516.00** | **$158,365.17** |
| TBP damage number | $229,109.42 x 2* = **$458,218.84** | $76,825 x 2* = **$153,652.00** | $305,935.42 x 22.4%** = **$68,634.83** |
| **Total *Flores* Claim** | | | **$227,000.00** |
| Canine claim | | | **25,000.00** |
| Plaintiffs' Incentive | | | **6,000.00** |
| **TOTAL** | | | **$258,000.00** |

\*  The doubling of this figure results from equal actual and liquidated damages.

\*\* This percentage was agreed on by the parties as a reduction because the claim is novel and has not been fully litigated.

**E.      Administration Of The Claims**

The Parties have agreed to retain Simpluris, Inc. (the "Administrator") to administer the issuance of the Claim Form and Release to all Plaintiffs, to receive and process completed Claim Form and Releases, to issue payments to Plaintiffs with appropriate withholdings, to issue payments to Plaintiffs' counsel, and to otherwise manage the Settlement Amount as set forth in the Settlement Agreement.  (Messing Decl., Exh. 1.)  The costs of the Administrator will be split equally between Plaintiffs' counsel and the County and will not reduce the Settlement Amount. The Settlement Agreement will govern the actions of the Administrator.

Upon execution of the Settlement Agreement, the Parties will execute the Order as signed and directed by the Court.  (See [Proposed] Order filed with this motion.)  Within 21 calendar days of entry of the Court's order approving the Parties' Motion, the County will transmit to the Administrator the Settlement Amount and a list, in electronic form, of each Plaintiff's name and last known address.  Within 30 calendar days of payment by the County to the Administrator of the Settlement Amount, the Administrator will cause to be mailed the Claim Form and Release to each Plaintiff.  Plaintiffs will have 30 calendar days from the postmark date of the Claim Form and Release to return a completed claim form to the Administrator (the "Claim Period").  Payment of the individually-calculated settlement amounts (less withholdings) to those Plaintiffs who timely return a Claim Form and Release shall occur no later than 30 calendar days after the close

1 | of the Claim Period.  Notwithstanding anything in this Agreement, no sum will be paid to any

2 | Plaintiff who has not signed, dated and returned the Claim Form and Release.

### III.

### STANDARD OF REVIEW

The court may approve an FLSA settlement if the settlement is a fair and reasonable resolution of a bona fide dispute.  (*Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420 at *2 (N.D. Cal. Jan. 10, 2014); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).)  For this settlement to be approved, the Parties must demonstrate that the proposed settlement is fundamentally fair, adequate, and reasonable.  (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).)

A bona fide dispute exists when there are legitimate questions about the existence and extent of defendant's FLSA liability.  (*Selk, supra*, at 1172 (S.D. Cal. 2016).)  In determining whether the FLSA settlement is reasonable, the court should consider whether "the proposed settlement reflects a reasonable compromise over contested issues." (*Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2012 WL 4465558, at *11 (E.D. Cal. Sept. 25, 2012).)  To make that determination, courts in this circuit have balanced factors such as: 1) the strength of the plaintiffs' case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the amount offered in settlement; 4) the extent of discovery completed and the stage of the proceedings; 5) the experience and views of counsel; and 6) the presence of a governmental participant.  (*Beidleman v. County of Modesto*, No. 116CV01100DADSKO, 2017 WL 5257087, at *2 (E.D. Cal. Oct. 26, 2017).)  Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation.  (*Ibid*, citing *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).)

An FLSA  request for attorneys' fees and costs should be approved if it is reasonable. (*Slezak v. County of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *1–2 (N.D. Cal. June 22, 2017).)  The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.  (*Farrar v. Hobby*, 506 U.S. 103, 114 (1992).)  "Where a plaintiff has

obtained excellent results, his attorney should recover a fully compensatory fee." (*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).)  In this case, all 99 members of the class recovered an award for counsels' litigation of two FLSA claims pled in the complaint and one unearthed during discovery.  This excellent result supports counsel receiving a full compensatory fee, as will be shown below.

**IV.**

**THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE**

Application of the factors set out in the preceding section support confirmation of the Settlement Agreement.

**A.      Plaintiffs' Liability Case Is Strong**

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." (*Adoma v. Univ. of Phoenix, Inc.,* 913 F.Supp.2d 964, 975 (E.D.Cal.2012).)  Pursuant to *Flores*, there is no dispute in this case as to whether cash in lieu of health insurance benefits must be calculated as part of the regular rate of pay for overtime payments under FLSA.  There is a very strong likelihood that under *Flores, supra*, Plaintiffs will be able to establish at least some amount of liability as a result.

**B.      Without Settlement, There Is The Potential Risk, Expense, Complexity, And Likelihood Of Further Litigation**

Among the factors relevant to this determination are the course of the negotiations, the existence of any factual or legal questions that place the outcome of the litigation in doubt, the benefits of immediate recovery balanced against litigation, and the parties' belief the settlement is fair.  (*Adoma, supra.*)  These considerations favor approving a settlement where there is a significant risk that litigation might result in a lesser recovery for the class or no recovery at all. (*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).)

Here, there is risk involved for all Parties in proceeding forward with the case.  In particular, the amount of Plaintiffs' potential recovery and Defendant's potential liability is heavily disputed. Plaintiffs have alleged that the County has miscalculated the regular rate of pay, but even if true,

1    this type of FLSA violation does not automatically trigger liability for damages.  (*See, e.g.*,

2    *Chavez, supra*.)  There is only liability if Plaintiffs were paid less than what they were owed under

3    the FLSA, and because the County generally pays overtime at rates more favorable than is

4    required by the FLSA, significant offsets may impact the amount of liability in this case.

5    Plaintiffs will argue *Flores* supports inclusion of the payments in the regular rate for calculation of

6    overtime payments, and the County will zealously defend against Plaintiffs' claim of willfulness and

7    liquidated damages.  Given the uncertainty in the law prior to *Flores*, Plaintiffs may not prevail on

8    their allegations of willfulness and lack of good faith.  (*Slezak, supra,* at *2.)  Further, Plaintiffs'

9    argument that those who did not receive cash back in lieu of medical benefits should be paid

10   damages is even more contentious.  There is no clear guidance on this issue, and as the proportion

11   of cash paid out of the County's cafeteria plan is within the range of what may be found to be

12   "incidental" (*see* 29 C.F.R. § 778.215(a)(5)), if not resolved in settlement the matter could be the

13   subject of protracted further litigation.

14          In addition, while *Flores* supports Plaintiffs' argument that the County should have included

15   the cash in lieu of medical payments in the regular rate for calculation of overtime payments, the

16   County will vigorously defend against Plaintiffs' claims that the County's actions were willful and not

17   in good faith.  Given the uncertainty in the law prior to *Flores*, it is entirely possible that Plaintiffs

18   would not prevail on their allegations of willfulness and lack of good faith.  (*Slezak*, *supra* at *2,

19   citing *Lynn's Food*, *supra,* at 1354-55.   Confronting a similar claim shortly before the *Flores*

20   decision, one judge in this district has held that, based upon the uncertainty in the law, the failure

21   to include a health benefit reimbursement amount in the regular rate was done in good faith,

22   denying recovery of liquidated damages.  (*Callahan v. County of Sanger*, No. 14-cv-600-BAM,

23   2015 WL 2455419, at *13-14 (E.D. Cal. May 22, 2015).)

24          Plaintiffs' argument that those who did not receive cash back in lieu of medical benefits

25   should be paid damages is even more contentious.  (Jasmine Decl., ¶¶ 10 and 15.)  As there is no

26   clear guidance on this issue, and it will take a substantial expenditure of time and money to

27   resolve these issues, if it were not settled.  Also, if this matter were to proceed and should the action

28

1   decertified, all members would be at risk of the financial burden of shouldering the costs of their own

2   cases.

3          Finally, of the two prongs, recovery on the TBP prong is significantly riskier as Plaintiffs

4   will be required to show that the County's cash-in-lieu contributions were more than an

5   "incidental" amount of the Cafeteria 125 Plan.  (See *Flores, supra,* at 902.)  But, there is currently

6   no established guideline as to what percentage is deemed "incidental" since the Ninth Circuit's

7   determination that the Department of Labor's 2003 Opinion Letter, which stated that 20% should

8   be the standard, was unpersuasive.  (*Id.* at 903.)

9          In sum, the TBP claim is novel and untested to verdict at trial.[4]  Therefore Plaintiffs'

10   counsel assignment of a 22.5% chance of recovery to that prong – a percentage which would still

11   afford those qualifying action members a tangible monetary benefit – was reasonable.[5]

12

13

14   _____

15   [4]      In fact, the only settlement agreement which Plaintiffs' counsel has found is its own which
16   was only recently approved (on March 20, 2018) by Judge Vince Chhabria of the United States
     District Court, Eastern District of California, in the matter of *Evan Alder, et al., v. County of Yolo*,
17   No. 16-cv-01682-VC (E.D. CA 2018) attached to Messing Decl., Ex 13.
     [5]      As author Peter Toll Hoffman states in his article regarding how to value a case for
18   settlement in the Journal of Dispute Resolution:

19          "Before a party can calculate its break-even point, the amount at which it is
            indifferent between settlement and trial, it must have some estimation of the
20          anticipated outcome of trial against which it can compare any settlement offer.  To
            make a comparison, it is not only necessary to predict whether the plaintiff or
21          defendant will prevail, but what amount of damages will be awarded must be
            calculated as well."

22

23   Peter Toll Hoffman, *Valuation of Cases for Settlement:  Theory and Practice*, p. 8, 1991 J. Disp.
     Resol. (1991).  He notes that when the law applies an objective measure of damages, the
24   anticipated verdict amount is measured by comparing the money value of the damages against the
     applicable standard.  *Id.*  The best predictor is what verdicts returned in cases similar to the one
25   being valued.  *Id.* at 9.  If verdicts are rare, then the parties look to settlements in similar claims
     adjusted to reflect the unique facts of the case.  *Id.* at 12-15.  But Mr. Tollman provides no
26   guidance in an instance such as this where the dispute is novel and extensive searches of case law,
     with the help of Westlaw research attorneys, have revealed no verdicts or similar settlements,
27   other than Plaintiffs' counsel's own recent one in the *Alder, supra,* matter.  (Declaration of D. Paul
     Bird II in Support of Further Briefing to Approve Settlement of Action Under Fair Labor
28   Standards Act and Dismiss Matter With Prejudice, ¶¶ 25, 26 [filed 04/04/18, Document 63-1].)

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

**C.     The Settlement Is Within Plaintiffs' Range Of Possible Recovery**

A district court evaluates a plaintiff's range of potential recovery to ensure that the settlement amount bears some reasonable relationship to the true settlement value of the claims. (See *Selk v. Pioneers Memorial Healthcare District, supra*.)  The settlement amount need not represent a specific percentage of the maximum possible recovery.  But in comparing the amount proposed in the settlement with the amount the plaintiff could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented.  (*Ibid*.)

The Parties have agreed to the terms and language of the Agreement.  Though the County is not conceding or admitting a violation of any law by settling this case, the settlement amount is within the range of all overtime compensation allegedly owed to Plaintiffs and all amounts allegedly owed for liquidated damages.   In addition, the County is paying reasonable attorneys' fees.  In other words, the Agreement reflects a fair approximation of the likely outcome for Plaintiffs if the action were to be tried.  The scope of the waiver and release provisions in the Agreement appropriately tracks the breadth of Plaintiffs' FLSA claims in this matter.  (Jasmine Decl., ¶ 15; *see, also, Ambrosino v. Home Depot U.S.A.*, No. 11cv1319 L(MDD), 2014 WL 3924609 at *2, n.8 (S.D. Cal. 2014).)  The Parties balanced numerous factors favoring settlement including the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the extent of the discovery completed; the stage of the proceedings; and the experience and views of counsel.  (Jasmine Decl., ¶¶ 8-13, 14; Hartinger Decl., ¶¶ 3-6.)

Lastly, it must be emphasized that based on the analysis of Defendant's expert, this settlement represents a full value recovery, with a three-year look back period and liquidated damages.  In other words, Plaintiffs are recovering 100% of what they could possibly recover if the matter proceeded through trial, and they won on every claim.

**D.     Extensive Discovery Was Conducted By Both Parties, And The Matter Settled Shortly Before Trial**

The Court must assess the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a

settlement.  (*See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014 ["A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."].)  So long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval.  (*Slezak, supra*, at *4 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).)  The Court should lean in favor of a settlement where evidence is presented that a considerable amount of discovery has been conducted "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  (*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 610 (E.D. Cal. 2015), citing *Adoma, supra,* at 977).)

Here, in the course of discovery, the County produced voluminous records to Plaintiffs, including eight separate productions of over 61,000 pages of information, as well as multiple files containing payroll data.  (Jasmine Decl., ¶ 12.)  Plaintiffs deposed three County employees, and the County deposed Plaintiffs Mark Kerzich and Timothy Wertz.  The Parties retained expert witnesses who analyzed Plaintiffs' claims and, based upon the County's payroll records, calculated the potential back pay due to Plaintiffs and Consenters.  (*Ibid.*)  Fact discovery is closed, and expert reports have been exchanged.  Given the information exchanged between the Parties and the investigation into the claims, the Parties' decision was informed and carefully considered.

**E.     The Scope Of Release Is Limited To Claims Related To This Litigation**

Courts review the scope of any release provision in an FLSA settlement to ensure that plaintiffs are not pressured into forfeiting claims.  (*Selk, supra,* at 1178.)  A release provision that generally tracks the plaintiffs' wage and hour claims without requiring plaintiffs to waive unrelated claims will weigh in favor of approval.  (*Ibid.*)  Here, the release provision in the Agreement tracks Plaintiffs' wage and hour claims.  (Messing Decl., Exh. 1 at ¶ 6.)  Specifically, Plaintiffs agree to resolve, release, waive, and discharge any claims they may have under the FLSA arising from the claims alleged in this case and arising prior to the effective date of the agreement.  (*Ibid.*)  The Agreement is limited in scope and closely tied to the relevant wage and hour claims at issue.

**F.      Experienced Counsel Views This Settlement As Reasonable**

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." (*Slezak, supra,* at *5 (citing *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014); see also *Millan, supra*, at 612 (citing *Nat'l Rural Telecomms.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ["Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"].)

For Plaintiffs, attorney Jason Jasmine is lead counsel and for 13 years has focused on labor and employment law on behalf of public employees, primarily public safety employees, including collective bargaining, wage and hour law, employee discipline and employment discrimination law.  (Jasmine Decl., ¶¶ 3-7.)  Gary Messing has been an attorney specializing in labor and employment law for 42 years and so has extensive experience litigating labor related cases.

Representing the County, Arthur A. Hartinger and Kevin P. McLaughlin are experienced wage and hour class action attorneys.  Mr. Hartinger has represented public entity employers in multiple collective action lawsuits alleging violations of the FLSA regular rate requirements arising from the decision in *Flores, supra*, and has provided advice and negotiated resolutions of disputes arising from the *Flores* decision prior to litigation on behalf of other public entity employers.  (*Ibid.*)  Counsel for both Parties assert that the individual amounts are fair and reasonable based on the damage calculations, the cost of further litigation, and the risk of an adverse verdict at trial.  (Jasmine Decl., ¶ 10 – 11; Messing Decl., ¶ 22; Hartinger Decl., ¶ 6.)

**G.      Settlement Was Reached Through The Guidance Of A Magistrate Judge**

The likelihood of fraud or collusion is low here because the Settlement was reached through arms-length negotiations, facilitated by an impartial mediator.  (*County P'ship Co. v. Atl. Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ["When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."].)

1   There is no evidence that the Parties or their counsel colluded or pursued their own self-

2   interests in reaching settlement.  The settlement negotiations were at all times adversarial and

3   agreement was reached only after both Parties compromised on certain positions, including

4   liquidated damages and the recovery period.  The settlement conference was presided over by

5   Magistrate Judge Barbara McAuliffe.  Because there is no evidence of collusion or self-interest,

6   the settlement should be approved.

7   **V.**

8   **PAYMENT OF ATTORNEYS FEES**

9   **A.      Legal Standard**

10   "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the

11   court must also assess the reasonableness of the fee award." *Selk, supra*, at 1180; *see also* 29

12   U.S.C. section 216(b) (providing that, in a FLSA action, the court "shall, in addition to any

13   judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

14   defendant, and costs of the action").  Where a settlement produces a common fund for the benefit

15   of the entire class, courts may employ either the lodestar method or percentage-of-recovery

16   method to determine a reasonable attorney's fee.  (*See In re Bluetooth*, 654 F.3d 935, 942 (9th Cir.

17   2011).)  However, where the recovery is separate from a common fund, the lodestar method is

18   usually employed.  *Id.*  Under the lodestar method, courts multiply "the number of hours the

19   prevailing party reasonably expended on the litigation by a reasonable hourly rate."  *Camacho v.

20   Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  "Although in most cases, the lodestar

21   figure is presumptively a reasonable fee award, the district court may, if circumstances warrant,

22   adjust the lodestar to account for other factors which are not subsumed within it."  *Slezak, supra*,

23   at *5 (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).

24   **B.      The Lodestar Is Presumed To Be Reasonable To Appropriately Compensate
         Plaintiffs' Attorneys' For Their Time**

25

26   The lodestar is strongly presumed to represent a "reasonable" fee. *Perdue v. Kenny A. ex

    *rel. Winn*, 559 US 542, 546 (2010).  "Although imperfect, [the lodestar method] … produces an

27   award that approximates the fee the prevailing attorney would have received for representing a

28

1   paying client who was billed by the hour in a comparable case; and it is readily administrable, …"

2   *Id.* at p. 543. This presumption of reasonableness is essential because "the purposes of the [fee-

3   shifting] statutes will not be met" unless plaintiffs' attorneys are "reasonably compensated for all

4   their time." (*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).) Courts must

5   award appropriate compensation to ensure that competent counsel take on cases protecting an

6   important public right which may not be financially lucrative. (*See City of Burlington v.*

7   *Dague,* 505 U.S. 557, 568 (1992); *see also Parkinson v. Hyundai Motor America,* 796 F.Supp.2d

8   1160, 1164 (C.D. Cal. 2010) ["Without the incentive of a fee award, plaintiffs… could not afford

9   to hire counsel to vindicate their rights."].) Courts "should defer to the winning lawyer's

10  professional judgment as to how much time he was required to spend on the case." (*Moreno* at p.

11  1112; see also *Blackwell v. Foley,* 724 F.Supp.2d 1068, 1081 (N.D.Cal.2010).)

12      Here, to secure a favorable settlement for their clients, counsel agreed to receive a fee award

13  well <u>below</u> their lodestar.

14      As the supporting declaration filed in support of the Joint Motion shows, plaintiffs' counsel

15  are receiving only 48% of a lodestar based on their regular hourly rate ($203 versus $425). (Messing

16  Decl., ¶¶ 15, 20.) Thus, whereas plaintiffs' lodestar was calculated at rates of up to $400 per hour,

17  fees at the rate of up to $600, and more, have been recognized as reasonable for attorneys handling

18  FLSA cases in this District. (*Slezak*, *supra*, at *7; *Bellinghausen, supra* [in a California wage and

19  hour case, hourly rate of $650 for partner with 16 years of experience, $425 to attorney with 6 years'

20  experience].) In *Alder v. County of Yolo, supra,* Judge Vince Chhabria recently awarded fees to

21  these same counsel based on rates of up to $460 per hour. (Messing Decl., ¶¶ 32 -- 35.)

22      This case, as with many FLSA collective action cases, was handled on a contingency basis,

23  so Plaintiffs' lawyers assumed all of the risk. As a society we must encourage competent attorneys

24  to vindicate rights on behalf of employees, current counsel will take less from this case than if they

25  had declined to represent the class and simply taken regular paid hourly work. Law firms take

26  contingency cases if the risk of no recovery is offset by the likelihood of significant recovery over

27  and above their regular rate for hourly work. Here, despite achieving an excellent result for

28  plaintiffs, counsel will reap no windfall. That is not to complain; after all, as explained,

compromises were necessary by the plaintiffs, plaintiffs' counsel and the defendants, in light of the uncertainties of this litigation.

**C.     The Settlement Agreement Rectifies The Concerns Raised By The Court**

The following chart comparing the two Settlement Agreements demonstrates that the new proposed damages and allocations satisfy the Court's concerns.

|  | Oct. 23, 2017 Settlement | September 5, 2018 Settlement |
|---|---|---|
| *Flores* claim | $ 156,000 | $ 227,000 |
| Canine claim | $  20,000 | $  25,000 |
| **Damages Total** | **$ 176,000** | **$ 252,000** |
| Incentive payments | $   4,000 | $   6,000 |
| Statutory fees | $ 150,000 | $ 192,000 |
| Contingency Fees | $  45,000 | $       0 |
| **Fees and Costs Total** | **$ 195,000** | **$ 192,000** |
| **Total** | **$ 375,000** | **$ 450,000** |

The September 5, 2018 settlement allocates $258,000 to Plaintiffs' damages and $192,000 to Plaintiffs' attorneys' fees, which <u>includes</u> $67,551.56 in costs.  (Messing Decl., ¶¶ 18, 19, Exh. 4.)

**D.     Addressing The Court's Concern, Plaintiffs' Attorneys' Fees In The New Settlement Agreement Are Fair And Reasonable**

The Parties' Revised Settlement Agreement resolves the Court's questions concerning Plaintiffs' attorneys' fees.  The prior settlement agreement was disfavored by the Court as it was contingent on a fee arrangement which pushed Plaintiffs' counsel's fees above 50 percent of the total settlement as it allowed Plaintiffs' counsel to receive both statutory and contingency fees. (*Ibid.*)  The new agreement seeks statutory fees, only, and, having been based on the lodestar, is presumptively reasonable under the authorities cited above.  It is also comparable with awards in other similar matters.  (Messing Decl., ¶¶ 30 – 33, Exhs. 7 – 10.)

**VI.**

**CONCLUSION**

The Parties wish to avoid incurring further litigation costs and expenses to resolve these bona fide disputes.  The settlement amount is based on an understanding that the case will not be further litigated.  The Parties' settlement is fair, reasonable, and adequate to all concerned in that

1   the opt-in plaintiffs would most likely not obtain a better outcome if they were to litigate and

2   prevail on all of the disputed issues.  However, further litigation would increase fees and costs and

3   would delay payment to the opt-in Plaintiffs.  Accordingly, the Parties jointly request that the

4   Court approve the Settlement Agreement, Notice, and related documents.

5

6   Dated:  October 29, 2018                     MESSING ADAM & JASMINE LLP

7

8                                               By _____/s/ Steven Kaiser_____

9                                                    GARY M. MESSING
                                                     JASON H JASMINE
10                                                   STEVEN KAISER
                                                     D. PAUL BIRD II
11                                               Attorneys for Plaintiffs MARK KERZICH and
                                                 TIMOTHY WERTZ, et al.
12

13  Dated:  October 29, 2018                     RENNE SLOAN HOLTZMAN SAKAI LLP

14

15                                              By _____/s/ Arthur P. Hartinger_____

16                                                   ARTHUR A. HARTINGER
                                                 Attorneys for Defendants COUNTY OF
17                                               TUOLUMNE

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

The Court carefully reviewed the Notice of Motion and Joint Motion for Order to Approve Settlement of Action Under Fair Labor Standards Act and Dismiss Matter with Prejudice ("Motion") and proposed Order, the Settlement Agreement, and relevant Exhibits.

Based upon a review of the record, and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows;

1.      The Settlement Agreement, which is incorporated herein by reference, is approved as fair, reasonable and just in all respects as to the Plaintiffs and the Parties shall perform the Settlement Agreement in accordance with its terms;

2.      The Notice of Collective Action Settlement Claim Form and Release to be sent to all Plaintiffs, attached as Exhibit C to the Settlement Agreement and incorporated herein by reference, is approved.

3.      The Court reserves jurisdiction over this Action for the purposes of enforcing the Settlement Agreement;

4.      The Court has made no findings or determination regarding the law, and this Motion and any Exhibits and any of the other documents or written materials prepared in conjunction with this Motion and Order shall not constitute evidence of, or any admission of, any violation of the law;

5.      Simpluris, Inc. will administer the issuance of the Claim Form and Release to all Plaintiffs, receive and process completed Claim Form and Releases, issue payments to Plaintiffs with appropriate withholdings, issue payments to Plaintiffs' counsel, and otherwise manage the Settlement Amount as set forth in the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:  _____, 2018

_____
**HON. DALE DROZD**
**UNITED STATES DISTRICT JUDGE**

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00060292-12

NOTICE OF MOTION AND JOINT MOTION FOR ORDER TO APPROVE REVISED FLSA SETTLEMENT