UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK KERZICH and TIMOTHY WERTZ, on behalf of themselves and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF TUOLUMNE,<br><br>Defendants. | No. 1:16-cv-01116-DAD-SAB<br><br>ORDER APPROVING REVISED FLSA SETTLEMENT AND DISMISSING ACTION WITH PREJUDICE<br><br>(Doc. No. 71) |

This matter is before the court on the parties' renewed motion for approval of their FLSA settlement agreement. (Doc. No. 71.) On December 4, 2018, that motion came before the court for hearing. Attorney Jason Jasmine appeared on behalf of plaintiffs and attorney Arthur Hartinger appeared on behalf of defendants. Having considered the parties' briefing, and having heard from counsel, the court will grant the parties' motion.

**BACKGROUND**

The complaint in this action was filed on July 28, 2016, alleging that defendants had violated the FLSA by under-paying municipal employees' overtime when the employees accepted cash in lieu of healthcare benefits, following the holding in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016). (Doc. No. 2.) A scheduling order was entered on November 1, 2016, setting a deadline for non-expert discovery to be completed by June 9, 2017 and expert discovery

1

to be completed by September 20, 2017. (Doc. No. 32.) Prior to the passing of the discovery deadline, the parties stipulated to conditional certification of the action on February 23, 2017. (Doc. No. 37.) No substantive motion practice took place. A magistrate judge of this court held two separate settlement conferences in this action, one on October 2, 2017 (Doc. No. 47) and the other on October 23, 2017 (Doc. No. 48). A settlement was reached following the second of those settlement conferences.

After a hearing before the undersigned, and after supplemental briefing provided by the parties, on August 14, 2018, the court denied approval of the settlement agreement without prejudice. (Doc. No. 64.) Following that denial, the parties engaged in an additional round of settlement negotiations under the direction of Magistrate Judge Barbara A. McAuliffe. The revised settlement agreement currently before the court is the product of those negotiations.

This proposed settlement essentially encompasses three theories of liability plaintiffs have alleged against defendant. The first directly follows the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), and alleges that any cash payments made to plaintiffs in lieu of healthcare benefits must be included in the calculation of overtime wages (the "cash-in-lieu" theory). (Doc. No. 71 at 12–13.) The second theory is an expansion of the holding in *Flores*, and seeks to have the total payments for healthcare benefits made by defendant on behalf of plaintiffs included in the calculation of overtime, regardless of whether they were paid as cash directly to plaintiffs or were in the form of healthcare benefits secured for plaintiffs (the "total benefits plan" theory). (*Id.* at 13.) Finally, plaintiffs seek to settle what they denote as their "canine claim," which concerns alleged underpayment of the defendant's canine police officers. (*Id.* at 14.)

The settlement agreement proposes a total payment of $450,000.00. (*Id.* at 10.) This total amount is designated to the following categories: $227,000.00 in damages to plaintiffs for both *Flores* theories of liability; $25,000.00 in damages for the canine claim; $6,000.00 total as incentive payments, awarding $3,000.00 each to plaintiffs Kerzich and Wertz; and $192,000.00 in attorneys' fees and costs to plaintiffs' counsel. (*Id.*) Notably, and in contrast to the prior proposed settlement, plaintiffs' counsel is not now seeking a further award of contingency fees. (*Id.* at 29.)

2

# LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Beidleman v. City of Modesto*, No. 1:16–cv–01100–DAD–SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Yue Zhou v. Wang's Rest.*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007). Since neither party has represented that the Secretary of Labor has approved this settlement, it falls to the court to evaluate whether this settlement should be approved under the FLSA.

Employees may bring collective actions under the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, district courts in this circuit have frequently applied a widely-used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Additionally, because FLSA settlements require court approval, payment of attorneys' fees from settlement proceeds is also subject to review by the court. *See Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1104–05 (9th Cir. 2014) (reviewing an award of attorneys' fees under the FLSA); *Dunn*, 2016 WL 153266, at *9 (N.D. Cal. Jan. 13, 2016) ("The Court retains the authority to determine what fees are reasonable [in an FLSA settlement]."); *Selk*, 159 F. Supp. 3d at 1180 ("Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award.") (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)).

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010), *recommendations adopted by* 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the

settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* In connection with this, the district court's "[o]bligation is not to act as caretaker but as gatekeeper," so that FLSA "settlements do not undermine the Act's purposes." *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14–866–JLS (JCGx), 2015 WL 12868143, at *2 (C.D. Cal. Nov. 2, 2015) (quoting *Goudie v. Cable Commc'ns, Inc.*, No. CV 08-507-AC, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009)). Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## DISCUSSION

**A.     Bona Fide Disputes**

Under the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the payment of cash in lieu of health insurance benefits ("CIL compensation") must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. There appears to be no dispute that defendant is liable under *Flores*, at least to some degree. (*See* Doc. No. 71 at 21.) However, as stated above, some of plaintiffs' theories of liability go beyond what was addressed by the Ninth Circuit in *Flores*. For instance, the total benefits plan theory "is novel and untested to verdict at trial." (*Id.* at 23.)

The parties also have numerous disagreements regarding the measure of liability. (*See* Doc. No. 71 at 21–23.) First, the parties dispute whether defendant acted in good faith in light of the uncertainty in the law prior to *Flores*. *See Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL 2455419, at *13–14 (E.D. Cal. May 22, 2015) (finding that the failure to include a health benefit reimbursement amount in calculating the regular rate of pay was done in good faith due to uncertainty in the law at the time). If not, plaintiffs would be entitled to an award of liquidated damages. *See* 29 U.S.C. §§ 216(b), 260. The parties also dispute whether the violations as alleged in this case were willful. (Doc. No. 71 at 22.) If so, the relevant statute of limitations period is three years rather than two. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); *see also Wagner v. County of Inyo*, No. 1:17-cv-00969-

DAD-JLT, 2018 WL 5099761, at *2 (E.D. Cal. Oct. 18, 2018).  With respect to the CIL claim, however, it is questionable whether a bona fide dispute exists in light of the decision in *Flores*.  However, "that fact alone does not compel rejection of the settlement because the value of the [CIL] claim[ ] has not been discounted as part of the settlement" in this case.  *McManus v. City of Ceres*, No. 1:17-cv-00355-DAD-BAM, 2018 WL 4262126, at *3 (E.D. Cal. Sept. 6, 2018).  As to plaintiffs' remaining causes of action, however, all of these issues impact the extent of defendant's FLSA liability in this case.  The court is therefore satisfied that there is a bona fide dispute at issue here.

**B.     The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA.  *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).  Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA:  (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.  *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). The court addresses each of these factors below.

    1.     Plaintiffs' Range of Possible Recovery

Under the terms of the settlement agreement, defendant will pay plaintiffs a total sum of $258,000.00.  (Doc. No. 74-1 at 3.)  Of that amount, $227,000.00 corresponds to damages arising from plaintiffs' *Flores* CIL claim and the total benefits claim, $25,000.00 corresponds to damages arising from the canine claim, and $6,000.00 arises from incentive payments of $3,000.00 each to named plaintiffs Kerzich and Wertz.  (*Id.*)  The agreement makes clear that, as counsel clarified at the hearing, the CIL claim has not been discounted, and reflects both the payment of liquidated damages and a three-year statute of limitations.  In other words, that claim is being compensated

6

at 100% of what plaintiffs could expect to recover at trial, even if they were to demonstrate both bad faith and willfulness on the part of defendants. (*Id.*) Owing to the novelty of the total benefits plan claim, that claim has been discounted to 22.4% of its anticipated value, although that amount also includes 100% of liquidated damages on that 22.4% backpay. (*Id.*) With respect to the canine claim, the parties agreed that no liquidated damages, and a two-year statute of limitations, were appropriate because the Deputy Sheriffs Association had jointly agreed to the canine pay methodology. (Doc. No. 72 ("Hartinger Decl.") at ¶ 7.) Accordingly, plaintiffs do not contend that bad faith is applicable to this claim.

Plaintiffs and defendant each retained outside experts to analyze the value of plaintiffs' claims. (Doc. No. 71 at 12–13.) As the pending motion indicates, this resulted in wildly different valuations. (*Id.* at 19.) The parties explained at oral argument on the pending motion that this disparity reflects a disagreement with respect to the appropriate modifier to be employed. Plaintiffs believe that a 1.5 multiplier is appropriate, while defendants (citing to several authorities) believe that only a 0.5 multiplier is warranted. *See* 29 C.F.R. § 778.110; *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1313 (10th Cir. 2011) (rejecting employees' argument that a 1.5 multiplier should be applied because "[u]nder that scenario, the Employees would receive two and one-half times the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires"); *Flores v. City of San Gabriel*, LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128) ("[T]he correct multiplier is 0.5, not 1.5."). After applying these multipliers to their respective calculations, the parties averaged the resulting dollar amounts to arrive at the total award of $227,000.00 for the CIL and total benefits plan claims. (Doc. No. 71 at 19.) Under these circumstances, the court finds that consideration of this factor weighs in favor of approval of the FLSA settlement.

2. The Stage of the Proceedings and the Amount of Discovery Completed

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh

/////

7

in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. During discovery, defendant produced over 61,000 pages of information to plaintiffs, as well as multiple files containing payroll data. (Doc. No. 73 ("Jasmine Decl." at ¶ 12.) Plaintiffs deposed three of defendant's employees, and defendant deposed both named plaintiffs. (*Id.*) Based upon defendant's productions and payroll records, both parties retained expert witnesses to calculate potential liability. (*Id.*) In addition to this discovery, the parties participated in a two-day settlement conference before the assigned magistrate judge, at the end of which they reached agreement on the terms of the settlement. (*Id.* at ¶ 13.) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Although liability with respect to some of plaintiffs' claims is essentially uncontested after *Flores*, other claims advanced by plaintiffs here are more novel, and recovery under those theories of liability is uncertain. In addition, and as discussed above, the parties disagree with respect to the proper multiplier, which greatly impacts the calculation of damages. Were a court to side with defendant on that issue, plaintiffs' recovery would be significantly reduced. In addition, with respect to at least some of plaintiffs' theories of liability, the calculation of damages as presented to the court is premised upon proving both willfulness and bad faith. As stated above, those issues remain disputed. While plaintiffs could expect at least some recovery if this case were to proceed to trial, the court concludes that under the circumstances, it is far from clear that they would recover more than they will receive under the settlement agreement. Accordingly, consideration of this factor weighs in favor of approval of the parties' FLSA settlement.

/////

### 4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision is limited to all "grievances, disputes or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from or attributable to Plaintiffs' claims that the County violated the FLSA and/or the MOU with regard to overtime occurring up to and including the Effective Date of this Agreement." (Doc. No. 74-1 at 5.) This release provision is nearly identical to those previously found appropriate in other FLSA cases, and the court similarly finds here that this release provision is reasonable. *See Amador v. City of Ceres*, No. 1:17-cv-00552-DAD-BAM, 2019 WL 935496, at *4 (E.D. Cal. Feb. 26, 2019); *McManus*, 2018 WL 4262126, at *5. Consideration of this factor therefore also weighs in favor of approval of the FLSA settlement here.

### 5. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014

9

WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel Jason Jasmine states that he has roughly fifteen years' experience in labor and employment law, primarily representing public safety employees. (Jasmine Decl. at ¶¶ 4–5.) Based upon this experience, and based in particular upon his belief that plaintiffs "would most likely not obtain a better outcome if they were to litigate and prevail on all of the disputed issues," attorney Jasmine contends that the settlement is fair and reasonable. (*Id.* at ¶ 11.) Similarly, although defendant's attorney Arthur Hartinger does not state what relevant experience he possesses, he also concludes that this settlement "effectively pays plaintiffs and consenters full value of back pay, with a three-year statute of limitations plus liquidated damages." (Hartinger Decl. at ¶ 12.) Attorney Hartinger also states that defendant was amenable to this settlement because it avoids the substantial litigation costs that would necessarily be incurred if this case were to proceed to trial. (*Id.*) This factor also weighs in favor of approval of the settlement agreement.

      6.   The Possibility of Fraud or Collusion

In addressing the parties' prior motion for approval of the settlement agreement (Doc. No. 58), the court at that time expressed great concern with respect to the amount of attorneys' fees sought. *Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1185–90 (E.D. Cal. 2018). As the Ninth Circuit has cautioned, courts should be wary of such awards, which may indicate "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Indeed, as this court reminded the parties, "[i]t is precisely the self-interest of counsel against which the court must guard." *Kerzich*, 335 F. Supp. 3d at 1187. As will be discussed in greater detail below, the parties have substantially reworked the settlement agreement with respect to the apportionment of attorneys' fees, and are to be commended for doing so. Thus, while this factor previously militated against approval of the settlement agreement, the court now finds that its prior concerns with respect to fraud and collusion have been effectively alleviated.

**C.    Attorneys' Fees and Costs**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180;

*see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund.[1] *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar

---

[1] In its prior order the court commented that "[t]ypically, attorneys' fees under the FLSA are determined using the lodestar method." *Kerzich*, 335 F. Supp. 3d at 1185. However, this statement is best understood in the context of the Ninth Circuit's opinion in *Vizcaino*, stating that the lodestar "may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. Applying this guidance, the undersigned has routinely used the lodestar calculation as a cross-check in FLSA settlements, while ultimately determining attorneys' fees as a percentage of the fund. *See, e.g.*, *Quiroz v. City of Ceres*, No. 1:17-cv-00444-DAD-BAM, 2019 WL 1005071, at *6–7 (E.D. Cal. Mar. 1, 2019); *Amador*, 2019 WL 935496, at *5–7; *Seguin v. County of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at *5–7 (E.D. Cal. Apr. 24, 2018). Indeed, in its earlier order in this case the court ultimately concluded that the amount of attorneys' fees was excessive after applying the percentage-of-the-fund method and concluding that a settlement agreement awarding 52% of the total settlement amount to plaintiffs' counsel could not be approved. *Kerzich*, 335 F. Supp. 3d at 1186–87. The court will therefore adhere to its approach of first analyzing attorneys' fees under the percentage-of-the-fund method, while applying a lodestar cross-check to ensure that the amount is reasonable.

calculation may convince a court that a lower percentage award is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

According to the terms of this settlement, plaintiffs' counsel will be paid $192,000 in fees and costs out of a total settlement amount of $450,000. (Doc. No. 71 at 29.) Of that total, plaintiffs' counsel avers that $67,551.26 is for costs, with the remainder for fees. (Doc. No. 74 ("Messing Decl.") at ¶ 18.) When that amount of costs incurred in this litigation is removed, the total attorneys fee award is $124,448.74. That equates to roughly 28 percent of the total settlement amount. Although slightly higher than the 25% benchmark employed by the Ninth Circuit, this amount is quite reasonable, and below similar fee awards the undersigned has previously approved in FLSA settlements. *See, e.g.*, *Goodwin v. Winn Mgmt. Grp.*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA collective action, which was thirty percent of the total settlement amount).

The court turns to the lodestar amount to cross-check whether a 28 percent award of attorneys' fees is appropriate here. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–01662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)).

This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with twenty-one years of experience); *Gong–Chun v. Aetna Inc.*,

12

No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 839–40 (E.D. Cal. 2016) (concluding that appropriate rates were $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years of experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years of experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Here, the declaration submitted by plaintiffs' counsel Gary M. Messing states that the attorneys who performed work on this case agreed to work at reduced rates. (Messing Decl. at ¶ 15.) Specifically, attorney Messing averred that labor and employment law litigation rates in the Eastern District of California "are seldom below the level of $450–475 per hour." (*Id.* at 6.) That declaration also included a chart showing the hours worked on this action by each attorney as well as the rates charged by each, which is replicated below:

| Attorney | Time | Rate | Value |
|---|---:|---:|---:|
| **Gary Messing** | 25.5 | $350.00 | $8,925.00 |
| **Jason Jasmine** | 94.0 | $320.00 | $30,080.00 |
| **Paul Bird** | 360.0 | $340.00 | $122,400.00 |
| **Tylor Dominguez** | 125.2 | $245.00 | $30,674.00 |
| **TOTAL** | **574.8** | | **$192,079.00** |

(*Id.*) Given counsels' level of experience, and given the prevailing rates in the Eastern District of

13

California, the court finds the fee award proposed in the settlement reasonable in light of this lodestar cross-check.

**D.    Incentive Award**

At its discretion, a district court may award incentive payments to named plaintiffs in class action cases or FLSA collective actions. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *see also Selk*, 159 F. Supp. 3d at 1181 (discussing FLSA collective action cases).

To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against his or her former employers. *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition, district courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount, or that are disproportionate relative to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365–66; *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp.*, No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). These courts have reasoned that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent

class members, destroying the adequacy of class representatives. *See Radcliffe*, 715 F.3d at 1165; *Staton v. Boeing Co.*, 327 F.3d 938, 977–78 (9th Cir. 2003).

Here, named plaintiffs Kerzich and Wertz will each receive $3,000.00 as an incentive payment under the proposed settlement, for a total of $6,000.00. (Doc. No. 71 at 29.) This equates to roughly 1.3 percent of the total settlement fund, which is in line with other incentive awards previously approved by this court. *See, e.g.*, *Goodwin*, 2018 WL 1036406, at *11 (awarding the named plaintiff $3,750, equivalent to 1.5 percent of the total settlement fund); *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 3190341, at *9 (E.D. Cal. July 27, 2017) (awarding the two named plaintiffs $20,000 and $15,000 respectively, which amounted to 0.2 percent and 0.3 percent of the total settlement fund). In addition, the named plaintiffs' recovery does not appear to be out of proportion to that of the remaining plaintiffs. The parties' motion indicates that the plaintiffs collectively will receive $252,000.00 in damages, and that there are 99 plaintiffs in this action. (Doc. No. 71 at 2, 29.) This averages to an award of $2,545.45 per plaintiff. Thus, the named plaintiffs will receive slightly more than double what the remaining plaintiffs will receive, which again is comparable to incentive awards previously found reasonable by this court. *See Wagner*, 2018 WL 5099761, at *7.

Considering these factors, the court approves an incentive award in the amount of $3,000.00 to each of the named plaintiffs.

**CONCLUSION**

For the reasons set forth above,

1. The Settlement Agreement, which is incorporated herein by reference, is approved as fair, reasonable, and just in all respects as to the plaintiffs and the parties shall perform the Settlement Agreement in accordance with its terms;

2. The Notice of Collective Action Settlement Claim Form and Release to be sent to all plaintiffs, attached as Exhibit C to the Settlement Agreement and incorporated herein by reference, is approved;

3. The Court has made no findings or determination regarding the law, and this motion and any exhibits and any of the other documents or written materials

15

|   |    | prepared in conjunction with this motion and order shall not constitute evidence of, or any admission of, any violation of the law; |
|---|----|---|

1. prepared in conjunction with this motion and order shall not constitute evidence of, or any admission of, any violation of the law;
4. Simpluris, Inc. will administer the issuance of the Claim Form and Release to all plaintiffs, receive and process completed Claim Form and Releases, issue payments to plaintiffs with appropriate withholdings, issue payments to plaintiffs' counsel, and otherwise manage the Settlement Amount as set forth in the Settlement Agreement;
5. This action is dismissed with prejudice; and
6. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: **April 18, 2019**

_____
UNITED STATES DISTRICT JUDGE